UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TODD MATTHEW SONDEY,

       Petitioner,

                            CASE NO. 05-CV-71831-DT

v.                             JUDGE VICTORIA A. ROBERTS
                             MAGISTRATE JUDGE PAUL J. KOMIVES

HUGH WOLFENBARGER,

       Respondent.

_____/

## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
     A.     *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1
     B.     *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . .  3
     C.     *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
     D.     *Sufficiency of the Evidence (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
           1.     *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7
           2.     *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
     E.     *Prosecutorial Misconduct and Jury Instructions (Claims II & III)* . . . . . . . . . . . . . . . . . . .  12
           1.     *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  12
           2.     *Cause and Prejudice* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13
     F.     *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14
III.    NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

*      *      *      *      *

I.      RECOMMENDATION: The Court should deny petitioner's application for the writ of habeas corpus.

II.     REPORT:

A.     *Procedural History*

       1.      Petitioner Todd Matthew Sondey is a state prisoner, currently confined at the Macomb Regional Correctional Facility in New Haven, Michigan.

2.      On April 30, 2002, petitioner was convicted of one count each of second degree murder, MICH. COMP. LAWS § 750.317; operating a motor vehicle under the influence of liquor causing death (OUIL), MICH. COMP. LAWS § 257.625(4); OUIL, third offense, MICH. COMP. LAWS § 257.625(1); and driving on a suspended or revoked licence causing death, MICH. COMP. LAWS § 257.904(4), following a jury trial in the Jackson County Circuit Court.  On May 16, 2002, he was sentenced to a term of life imprisonment on the murder conviction, a concurrent term of 10-15 years' imprisonment on the OUIL causing death conviction, a concurrent term of 3-5 years' imprisonment on the OUIL third offense conviction, and a concurrent term of 10-15 years' imprisonment on the suspended license conviction.

3.      Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

I.      DID THE PROSECUTION FAIL TO PRODUCE SUFFICIENT EVIDENCE AT TRIAL TO SUSTAIN A JURY VERDICT OF GUILT BEYOND A REASONABLE DOUBT OF THE OFFENSE OF SECOND DEGREE MURDER MCLA 750.317, WHERE DEFENDANT'S STATE OF MIND OR ACTIONS DID NOT CONSTITUTE MALICE?

II.     WAS DEFENDANT DENIED HIS RIGHT TO A FAIR TRIAL UNDER THE MICHIGAN AND FEDERAL CONSTITUTIONS BY THE INTENTIONAL PROSECUTORIAL MISCONDUCT, IN HIS IMPROPER AND HIGHLY PREJUDICIAL ARGUMENT TO THE JURY WHEN HE: VOUCHED FOR [THE] CREDIBILITY OF HIS WITNESSES; BOLSTERED THE VALIDITY OF HIS CASE; DENIGRATED THE DEFENDANT, HIS DEFENSE, AND DEFENSE WITNESSES; ARGUED FACTS NOT IN EVIDENCE; MISCHARACTERIZED THE EVIDENCE; ARGUED CIVIC DUTY AND SYMPATHY FOR THE VICTIM AS A BASIS TO CONVICT; MISREPRESENTED THE APPLICABLE LAW; AND SHIFTED THE BURDEN OF PROOF TO DEFENDANT?

III.    WERE THE TRIAL COURT'S FINAL INSTRUCTIONS THAT INCLUDED THE READING OF CJI2d 16.5, 16.8, 16.12, 16.17 AND 16.18, CONFUSING AND FAIL IN THEIR INTENDED PURPOSE TO FULLY AND FAIRLY PRESENT THE CASE AND BASIC AND CONTROLLING

ISSUES TO THE JURY IN AN UNDERSTANDABLE MANNER?

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence. The court did, however, vacate petitioner's OUIL causing death and driving on a suspended licence causing death convictions, at the request of the prosecutor. *See People v. Sondey*, No. 242145, 2003 WL 23018260 (Mich. Ct. App. Dec. 23, 2003) (per curiam).

4.      Petitioner, proceeding *pro se*, sought leave to appeal these three issues to the Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal in a standard order. *See People v. Sondey*, 470 Mich. 885, 682 N.W.2d 95 (2004).

5.      Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus on May 10, 2005. As grounds for the writ of habeas corpus, he raises the three issues that he raised in the state courts.

6.      Respondent filed his answer on November 10, 2005. He contends that petitioner's sufficiency of the evidence claim is without merit, and that petitioner's remaining claims are barred by petitioner's procedural default in the state courts.

7.      Petitioner filed a reply to respondent's answer on December 21, 2005.

8.      Respondent filed a supplemental response on December 27, 2005.

B.      *Factual Background Underlying Petitioner's Conviction*

        As summarized in petitioner's brief on appeal in the Michigan Court of Appeals, petitioner's convictions arise from

> a motor vehicle accident in which Defendant[] lost control of his Ford Probe vehicle while traveling eastbound on M-60 near the crest of a hill, went onto the gravel shoulder, then slid back on to the road surface and while sliding sideways, crossed into the westbound lane and struck a Chevy Celebrity head on, resulting in the death of the driver of the Celebrity, Amanda Hale, a 20 year old student at Spring Arbor College. The collision occurred around midnight on September 20, 2001, on M-60

3

near Moscow Road, just outside of Spring Arbor, in Jackson County Michigan. Defendant who's [sic] blood alcohol was measured at .16 sustained serious injuries including a closed head injury requiring extensive hospitalization.

   . . . .

  The prosecution presented evidence at trial showing that on September 20, 2001, Spring Arbor police officer Brian Harmison, on routine patrol in the Village of Spring Arbor, noticed in his rear view mirror that a vehicle was passing a line of semi-trucks in the downtown area on Main Street, where the speed limit was 35 mph. He pulled off on a side street to wait for the vehicle to pass and to lock his radar on it to obtain a speed. Before he could do so the car sped past at what he estimated to be 80 mph. He pulled out after the vehicle eastbound on Main Street (M-60 outside of the village), activated his lights and siren and claimed that he was traveling at speeds over 100 mph to attempt to catch up to the vehicle. He observed it for a brief time when it disappeared over a hill about a mile outside of Spring Arbor. As he drove over the crest of the hill he did not see any vehicles, until he saw the reflector of a car off the north side of M-60 upside down, then another vehicle on its side against a tree, both with extensive damage form a collision (T1, 169-184).[1]

  He contacted EMS and other emergency personnel who required the jaws of life to extract Ms. Hall from her vehicle. She was conveyed to Foote Hospital in Jackson then flown to University of Michigan Hospital in Ann Arbor, where she died from her injuries.

  Mark Carrithers and Craig Robbins were truck drivers who were driving their rigs in the Village of Spring Arbor when passed by Defendant's vehicle. Contrary to Officer Harmison's testimony, they both indicated that Defendant's vehicle was traveling at a speed range of 55-60 mph, when it passed them (T1, 202-211; 213-219).[2]

  Accident reconstruction experts Joseph Quainton and Jason Breining, of the Jackson County Sheriff's Department, (JCSD) were called to the scene and to investigate the accident. They photographed and took measurements of the area and collected evidence. Two empty beer cans were found in Defendant's vehicle. They opined that Defendant's vehicle went off the road surface to the eastbound gravel shoulder causing yaw marks to be left, then as the vehicle "fishtailed" and slid sideways, returned to the paved surface, went across the eastbound lane and the

---

[1]In addition to this summary of his testimony, Officer Harmison testified that both Spring Arbor University and a McDonald's restaurant were on the road through town on which petitioner was going 80 miles per hour, *see* Trial. Tr., Vol. I, at 174; and that petitioner passed the two semis by crossing a doubly yellow line while going up a hill, and that along this stretch of road were a retirement center, a grocery store, and a restaurant, *see id.* at 176-77.

[2]Both testified that petitioner passed them, and was going 55 miles per hour, while they were still in the Village, where the posted speed was 35 miles per hour. *See* Trial Tr., Vol. I, at 207, 215. In addition, Carrithers testified that petitioner was traveling so fast that he radioed a warning to other drivers. *See id.* at 207.

westbound lane onto the westbound shoulder, where its passenger side impacted head-on with the Celebrity that had braked and swerved to the right in an attempt to avoid being hit. (T1, 220-295).

Based on the calculations and subsequent measurements taken with a new computer laser device, it was determined that Defendant's vehicle was traveling at a speed of 74 mph when it left the road surface and 46 mph when it collided with Ms. Hale's vehicle (T1 282, 286; T2 340).[3]

Stipulations were entered into that Defendant's drivers [sic] license was suspended continuously since January 28, 1998, that the victim was Amanda Hale, who died from multiple trauma that resulted in brain death and the decision was made to remove her from life support on September 22, 2001, that the lab report indicated that Defendant's BAC was .16 and that the chain of evidence was proper, and to the qualifications and a report from MSP Sergeant Megee, who verified the JCSD conclusions as related to speed of vehicles (T1, 198-200; 296-302).

The people rested as did the defense without offering any evidence (T1, 302-303).

Def.-Appellant's Br. on App., in *People v. Sondey*, No. 242145 (Mich. Ct. App.), at 1-3.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[3]The experts also concluded that neither car had mechanical failure, and that Hale did not any way contribute to the cause of the accident. *See* Trial Tr., Vol. I, at 289, 292.

5

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by the Supreme Court." Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence." *Williams*, 529 U.S. at 412. Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.' In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing

6

legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16. Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue. *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Sufficiency of the Evidence (Claim I)*

Petitioner first argues that the prosecution presented insufficient evidence to prove beyond a reasonable doubt that he committed second degree murder. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

1.      *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970). Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is

7

whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).   Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).  In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence.  *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).  However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision.  Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case."  *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*, *Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975).  Thus, "[a] federal court must look to state law to determine the elements of the crime."  *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment.  *See* MICH. COMP. LAWS § 750.317.  To establish second degree murder, the prosecution must show that the defendant killed a human being with

8

malice aforethought. In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980).

2.     *Analysis*

Petitioner contends that there was insufficient evidence presented at trial to sustain his conviction. Specifically, he contends that the prosecution failed to present sufficient evidence of malice. The Michigan Court of Appeals rejected this claim. The court began its analysis by noting that, under Michigan caselaw, "'not every intoxicated driving case resulting in a fatality constitutes second degree murder." Rather, to satisfy the malice requirement for second-degree murder, the evidence must show 'a level of misconduct that goes beyond that of drunk driving.'" *Sondey*, 2003 WL 23018260, at *1, slip op. at 2 (quoting *People v. Werner*, 254 Mich. App. 528, 533, 659 N.W.2d 688, 693(2002)). The court also explained, however, that "malice may be inferred from evidence that establishes 'the intent to do an act that is in obvious disregard of life-endangering consequences.'" *Id.* (quoting *People v. Aldrich*, 246 Mich. App. 101, 123, 631 N.W.2d 67, 80 (2001) (internal quotations omitted)). Applying theses principles to petitioner's case, the court concluded that the evidence of malice was sufficient, explaining:

> In this case, the facts established a level of conduct that goes beyond mere drunk driving. Defendant had a blood alcohol level well over the legal limit. He knowingly drove with a driver's license that had been suspended for four years. He lived near the scene of the accident and was, therefore, familiar with the terrain of the road on which it occurred. He was speeding down the town's main thoroughfare and later passed a pair of semi-tractor trailers on a two-lane road as they climbed a

9

large hill in an area designated as a no-passing zone. There was evidence indicating that defendant was speeding over one-hundred miles per hour when he drove down a steep decline in a hilly area that blocked the view of vehicles driving in the opposite direction. Police accident reconstruction experts opined that immediately following this maneuver, he lost control of his vehicle and crashed into the car that the twenty-year old decedent was driving in the opposite direction. We conclude that the evidence was sufficient for a reasonable inference that defendant acted in obvious disregard of life-endangering consequences.

*Id*. at *2, slip op. at 2. The Court should conclude that this determination was reasonable.

As noted above, under Michigan law malice may be inferred from "the intent to do an act that is in obvious disregard of life-endangering consequences." *Aldrich*, 246 Mich. App. at 123, 631 N.W.2d at 80. Here, there was more than mere evidence of petitioner's drunk driving; rather, there was evidence presented which showed "a level of misconduct that [went] beyond that of drunk driving." *People v. Goecke*, 457 Mich. 442, 466, 579 N.W.2d 868, 879 (1998). Specifically, the prosecutor presented evidence that petitioner was driving at an excessively high rate of speed through business areas, and had passed two trucks in a downtown area by passing over a double yellow line (indicating a no-passing zone) on a hill. Further, there was evidence that petitioner was familiar with the area. The courts have repeatedly found similar circumstances sufficient to establish the malice element of second degree murder under Michigan law. *See, e.g.*, *Goecke*, 457 Mich. at 470, 579 N.W.2d at 881 (defendant evaded police, drove at high speed on city's main artery, and narrowly avoided one accident prior to the fatal accident); *id*. at 471, 579 N.W.2d at 881 (another defendant has a blood alcohol content of .18%, drove well in excess of the speed limit, and ran a red light); *Aldrich*, 246 Mich. App. at 123, 631 N.W.2d at 80, *habeas corpus denied sub nom. Aldrich v. Bock*, 327 F. Supp. 2d 743, 763 (E.D. Mich. 2004) (Cleland, J., adopting recommendation of Majzoub, M.J.) (defendant drag racing at excessive speed while intoxicated); *see also*, *United States v. Sheffey*, 57 F.3d 1419, 1431 (6th Cir. 1995) (applying malice element of federal murder statute);

10

*Hamilton v. McLemore*, No. 01-10121, 2004 WL 1765483, at *4 (E.D. Mich. July 9, 2004) (Lawson,

J.); *People v. Bell*, No. 242168, 2003 WL 22399290, at *9 (Mich. Ct. App. Oct. 21, 2003) (per

curiam); *People v. Cloutier*, No. 204723, 1999 WL 33446673, at *1 (Mich. Ct. App. Apr. 20, 1999)

(per curiam).

Petitioner also contends that the evidence was insufficient because Officer Harmison's

testimony was incredible, as it was contradicted by the testimony of the truck drivers and the

physical evidence from the accident scene. "The fact that the testimony is contradictory does not

mean that evidence is insufficient, only that the jury must make credibility determinations."

*Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995). It is the job of the

jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must

presume that the jury resolved those conflicts in favor of the prosecution. *See Jackson*, 443 U.S. at

326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996). Although the truck drivers

estimated petitioner's speed to about 55 miles per hour in the 35 mile per hour zone, petitioner offers

no reason why their testimony was inherently superior to Officer Harmison's 80 miles per hour

estimate. Further, under either version petitioner was vastly exceeding the speed limit through a

downtown area, while also passing the trucks on a hill in a no passing zone. Further, the accident

report does not contradict Officer Harmison's testimony that petitioner was going 100 miles per hour

outside of the Village. The accident reconstruction experts could only determine petitioner's

speed–at 74 miles per hour–when he began to lose control of the vehicle. This does not preclude

a conclusion that petitioner was driving faster than that speed prior to losing control. Thus, this

Court cannot disturb the jury's credibility findings.

In short, there was sufficient evidence presented from which the jury could infer that

petitioner acted with malice aforethought sufficient to constitute second degree murder. Accordingly, the Michigan Court of Appeals's resolution of this claim was not an unreasonable application of *Jackson v. Virginia*, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.     *Prosecutorial Misconduct and Jury Instructions (Claims II & III)*

Petitioner next raises several challenges to the prosecutor's comments at his trial and the trial court's instructions to the jury.  The Court should conclude that these claims are procedurally defaulted, and thus that petitioner is not entitled to habeas relief.

1.     *Procedural Default*

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment.  *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977).  Habeas review of such a claim is barred "unless the habeas petitioner can show 'cause' for the default and 'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'"  *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted).

Here, petitioner's jury instruction and prosecutorial misconduct claims are barred by petitioner's procedural default in the state courts.  The Michigan Court of Appeals found that a review of these claims was barred by petitioner's failure to object to the jury instructions and prosecutorial misconduct in the trial court.  *See Sondey*, 2003 WL 23018260, at *2, slip op. at 2 ("Defendant failed to object to the prosecutor's alleged misconduct at trial and, thus, has failed to

12

preserve this issue for appeal."); *id.* at \*4, slip op. at 4 ("Defendant's attorney affirmatively expressed satisfaction with the instructions at trial.  Defendant has therefore waived the issue."). This contemporaneous objection rule was firmly established at the time of petitioner's trial.  *See, e.g.*, *People v. Duncan*, 402 Mich. 1, 15-16, 260 N.W.2d 58, 61-62 (1977); *People v. Curry*, 175 Mich. App. 33, 39, 437 N.W.2d 310, 314 (1989).  As the state court clearly and expressly relied on this state procedural rule with respect to petitioner's jury instruction and prosecutorial misconduct claims, these claims are barred absent a showing of either cause and prejudice or a fundamental miscarriage of justice.  *See Engle v. Isaac*, 456 U.S. 107, 125-129 (1982) (state contemporaneous objection rule is adequate procedural bar precluding consideration of habeas claims).

Further, this conclusion is not altered by the fact that the Michigan Court of Appeals did consider the merits of petitioner's prosecutorial misconduct claims.  It is clear that the court of appeals did so only in the context of determining whether petitioner could establish plain error to overcome his procedural default.  "[P]lain error review by the state court does not constitute a waiver of procedural default rules."  *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005); *see also*, *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).  Accordingly, the Court should conclude that petitioner's prosecutorial misconduct and jury instruction claims are procedurally defaulted.

       2.     *Cause and Prejudice*

As noted above, petitioner can still have the merits of his defaulted claims considered if he shows cause for, and prejudice attributable to, his procedural default.  To establish "cause," petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray*, 477 U.S. at 488; *see also*, *Coleman*, 501 U.S. at 753.  In his reply brief, petitioner raises only one basis to establish cause: counsel's alleged

13

ineffectiveness in failing to object at trial. However, petitioner cannot rely on this argument to establish cause for his procedural default.

As the Supreme Court has observed, "in certain circumstances counsel's ineffectiveness in failing properly to preserve the claim for review in state court will suffice" to establish cause. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000) (citing *Murray*, 477 U.S. at 488-89). In order to constitute cause, however, counsel's performance must amount to ineffective assistance of counsel under the Sixth Amendment. *See id*. "In other words, ineffective assistance adequate to establish cause for the procedural default of some *other* constitutional claim is *itself* an independent constitutional claim." *Id*. For this reason, the ineffective assistance claim which is asserted as cause must itself be both exhausted, *see id*. at 451-52 (discussing *Murray*, 477 U.S. at 489), and not procedurally defaulted, *see id*. at 452-53. Here, petitioner has never presented, in any fashion, his ineffective assistance of counsel claims to the Michigan courts. They are therefore unexhausted, and cannot be used as a basis to establish cause to overcome his procedural default. *See Lott v. Coyle*, 261 F.3d 594, 608-09 (6th Cir. 2001). Further, because petitioner must establish both cause and prejudice, his failure to establish cause makes it unnecessary to consider the prejudice issue. *See Hargrave-Thomas v. Yukins*, 374 F.3d 383, 389 (6th Cir. 2004); *Bonilla v. Hurley*, 370 F.3d 494, 497 (6th Cir. 2004). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these claims.

F.      *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's prosecutorial misconduct and jury instruction claims are barred by his procedural default in the state courts, and that the state courts' resolution of petitioner's claim sufficiency of the evidence claim did not result

14

in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.


                              s/Paul J. Komives
                              PAUL J. KOMIVES
                              UNITED STATES MAGISTRATE JUDGE

Dated: 3/27/06

The undersigned certifies that a copy of the foregoing
order was served on the attorneys of record by electronic
means or U.S. Mail on March 27, 2006.

s/Eddrey Butts
Case Manager