UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


TODD MATTHEW SONDEY,

          Petitioner,

                                  CASE NO. 2:05-CV-71831
v.                                JUDGE VICTORIA A. ROBERTS
                                MAGISTRATE JUDGE PAUL J. KOMIVES

JEFF WHITE,

          Respondent.[1]

_____/


## REPORT AND RECOMMENDATION

*Table of Contents*

I.      RECOMMENDATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
II.     REPORT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     A.    *Procedural History* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
     B.    *Factual Background Underlying Petitioner's Conviction* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
     C.    *Standard of Review* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
     D.    *Sufficiency of the Evidence (Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
          2.    *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
     E.    *Prosecutorial Misconduct and Jury Instructions (Claims II & III)* . . . . . . . . . . . . . . . . . . . . . 14
          1.    *Procedural Default* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
               a. Default of the Claims . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
               b. Cause and Prejudice . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
          2.    *Prosecutorial Misconduct Claims (Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
               a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
               b. Denigrating Defense/Counsel . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
               c. Arguing Facts Not in Evidence . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
               d. Misstating the Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
               e. Civic Duty/Sympathy . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
          3.    *Jury Instructions (Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
               a. Clearly Established Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23
               b. Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25
     F.    *Ineffective Assistance of Counsel (Amended Claims I-III)* . . . . . . . . . . . . . . . . . . . . . . . . . . 27
          1.    *Clearly Established Law* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27
          2.    *The State Court Evidentiary Hearing* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
          3.    *Trial Counsel (Amended Claim I)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
               a. Failure to Investigate or Present a Defense . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

_____

      [1]By Order entered this date, Jeff White has been substituted in place of Hugh Wolfenbarger as
the proper respondent in this action.

          b.  Failure to Allow Petitioner to Testify . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36
          c.  Conceding Guilt . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38
          d.  Failure to Object . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 41
     4.  *Appellate Counsel (Amended Claim II)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
     5.  *Evidentiary Hearing (Amended Claim III)* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 42
  G.  *Certificate of Appealability* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
     1.  *Legal Standard* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 45
     2.  *Analysis* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 46
  H.  *Conclusion* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47
III.  NOTICE TO PARTIES REGARDING OBJECTIONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 47

*     *     *     *     *

I.    <u>RECOMMENDATION</u>: The Court should deny petitioner's application for the writ of habeas corpus.

II.    <u>REPORT</u>:

A.    *Procedural History*

    1.    Petitioner Todd Matthew Sondey is a state prisoner, currently confined at the Mound Road Correctional Facility in Detroit, Michigan.

    2.    On April 30, 2002, petitioner was convicted of one count each of second degree murder, MICH. COMP. LAWS § 750.317; operating a motor vehicle under the influence of liquor causing death (OUIL), MICH. COMP. LAWS § 257.625(4); OUIL, third offense, MICH. COMP. LAWS § 257.625(1); and driving on a suspended or revoked licence causing death, MICH. COMP. LAWS § 257.904(4), following a jury trial in the Jackson County Circuit Court.  On May 16, 2002, he was sentenced to a term of life imprisonment on the murder conviction, a concurrent term of 10-15 years' imprisonment on the OUIL causing death conviction, a concurrent term of 3-5 years' imprisonment on the OUIL third offense conviction, and a concurrent term of 10-15 years' imprisonment on the suspended license conviction.

    3.    Petitioner appealed as of right to the Michigan Court of Appeals raising, through counsel, the following claims:

2

I.   DID THE PROSECUTION FAIL TO PRODUCE SUFFICIENT
EVIDENCE AT TRIAL TO SUSTAIN A JURY VERDICT OF GUILT
BEYOND A REASONABLE DOUBT OF THE OFFENSE OF SECOND
DEGREE MURDER MCLA 750.317, WHERE DEFENDANT'S STATE OF
MIND OR ACTIONS DID NOT CONSTITUTE MALICE?

II.  WAS DEFENDANT DENIED HIS RIGHT TO A FAIR TRIAL UNDER
THE MICHIGAN AND FEDERAL CONSTITUTIONS BY THE
INTENTIONAL PROSECUTORIAL MISCONDUCT, IN HIS IMPROPER
AND HIGHLY PREJUDICIAL ARGUMENT TO THE JURY WHEN HE:
VOUCHED FOR [THE] CREDIBILITY OF HIS WITNESSES;
BOLSTERED THE VALIDITY OF HIS CASE; DENIGRATED THE
DEFENDANT, HIS DEFENSE, AND DEFENSE WITNESSES; ARGUED
FACTS NOT IN EVIDENCE; MISCHARACTERIZED THE EVIDENCE;
ARGUED CIVIC DUTY AND SYMPATHY FOR THE VICTIM AS A
BASIS TO CONVICT; MISREPRESENTED THE APPLICABLE LAW;
AND SHIFTED THE BURDEN OF PROOF TO DEFENDANT?

III. WERE THE TRIAL COURT'S FINAL INSTRUCTIONS THAT
INCLUDED THE READING OF CJI2d 16.5, 16.8, 16.12, 16.17 AND 16.18,
CONFUSING AND FAIL IN THEIR INTENDED PURPOSE TO FULLY
AND FAIRLY PRESENT THE CASE AND BASIC AND CONTROLLING
ISSUES TO THE JURY IN AN UNDERSTANDABLE MANNER?

The court of appeals found no merit to petitioner's claims, and affirmed his conviction and sentence.

The court did, however, vacate petitioner's OUIL causing death and driving on a suspended licence

causing death convictions, at the request of the prosecutor. *See People v. Sondey*, No. 242145, 2003

WL 23018260 (Mich. Ct. App. Dec. 23, 2003) (per curiam).

4.    Petitioner, proceeding *pro se*, sought leave to appeal these three issues to the

Michigan Supreme Court. The Supreme Court denied petitioner's application for leave to appeal

in a standard order. *See People v. Sondey*, 470 Mich. 885, 682 N.W.2d 95 (2004).

5.    Petitioner, proceeding *pro se*, filed the instant application for a writ of habeas corpus

on May 10, 2005. As grounds for the writ of habeas corpus, he raises the three issues that he raised

in the state courts. Respondent filed an answer to the petition on November 15, 2005, and petitioner

filed a reply on December 21, 2005.  On March 27, 2006, I filed a Report recommending that the Court deny the petition.  Specifically, I recommended that the Court conclude that petitioner's sufficiency of the evidence claim is without merit, and that petitioner's remaining two claims were barred by his procedural default in the state courts.  I also recommended that the Court conclude that petitioner could not assert the ineffective assistance of counsel as cause to excuse his default, because no ineffective assistance of counsel claim had been exhausted in the state courts.  Subsequently, petitioner filed a motion to stay the petition so that he could exhaust his ineffective assistance of counsel claims.  On June 28, 2006, I filed a Report recommending that the Court stay the case pending exhaustion, and the Court adopted that recommendation on July 25, 2006.

6.     On September 22, 2006, petitioner filed a motion for relief from judgment in the trial court pursuant to MICH. CT. R. 6.500-.508, raising his ineffective assistance of counsel claims.  Following an evidentiary hearing at which petitioner and his trial counsel testified, the court denied the motion.  Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court, raising the following claims:

I.     DEFENDANT SONDEY WAS DENIED HIS RIGHT TO THE EFFECTIVE ASSISTANCE OF COUNSEL AT TRIAL AS GUARANTEED BY THE 6TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 20 OF THE MICHIGAN CONSTITUTION 1963 WHEN COUNSEL'S PERFORMANCE FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS WHERE HE FAILED TO INTERVIEW DEFENDANT, INVESTIGATE AND PRESENT A DEFENSE, FAILED TO INFORM DEFENDANT OF HIS RIGHT TO TESTIFY, PLED DEFENDANT GUILTY WITHOUT HIS CONSENT, FAILED TO OBJECT TO THE PROSECUTOR'S INTENTIONAL MISCONDUCT AND TRIAL JUDGE'S INSTRUCTIONS TO THE JURY; AND BUT FOR THE CUMULATIVE EFFECT OF COUNSEL'S ERRORS THERE WAS A REASONABLE PROBABILITY THAT THE RESULT OF DEFENDANT'S TRIAL COULD HAVE BEEN DIFFERENT.

II.    DEFENDANT SONDEY WAS DENIED HIS RIGHT TO EFFECTIVE

4

ASSISTANCE OF COUNSEL ON HIS APPEAL OF RIGHT TO THE MICHIGAN COURT OF APPEALS AS GUARANTEED BY THE 6TH AMENDMENT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 20 OF THE MICHIGAN CONSTITUTION 1963 WHERE HIS APPELLATE COUNSEL'S PERFORMANCE FELL BELOW AN OBJECTIVE STANDARD OF REASONABLENESS WHEN HE FAILED TO RAISE THE MERITORIOUS ISSUE OF TRIAL COUNSEL'S INEFFECTIVE ASSISTANCE WHICH WAS CLEARLY STRONGER THAN THE ISSUES HE PRESENTED AND BUT FOR COUNSEL'S OMISSIONS THERE WAS A REASONABLE PROBABILITY THAT THE RESULT OF HIS APPEAL WOULD HAVE BEEN DIFFERENT.

III.   DEFENDANT SONDEY RESPECTFULLY ASKS THIS COURT TO REMAND HIS CASE FOR A SECOND EVIDENTIARY HEARING PURSUANT TO MCR 7.211(C)(1)(a)(i)(ii) TO ADDRESS TRIAL COUNSEL'S FAILURE TO OBJECT TO THE INSTRUCTIONS TO THE JURY BECAUSE THE FIRST EVIDENTIARY HEARING DID NOT ADEQUATELY DEVELOP THE FACTS NECESSARY TO EVIDENTIALLY SUPPORT DEFENDANT'S CLAIM FOR APPELLATE REVIEW AND THE TRIAL JUDGE CLEARLY ERRED WHEN HE FAILED TO ADDRESS THE ISSUE.

The appellate courts denied petitioner's applications for leave to appeal in standard orders, based on petitioner's "fail[ure] to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Sondey*, 483 Mich. 912, 762 N.W.2d 499 (2009); *People v. Sondey*, No. 285340 (Mich. Ct. App. Sept. 3, 2008).

7.     Petitioner filed an "Amendment to Writ of Habeas Corpus" in this Court on April 6, 2009, raising the three claims he raised in his state court motion for relief from judgment. Construing the amendment as a motion to reopen his case, I entered an Order on May 18, 2009, lifting the stay and ordering respondent to file a supplemental answer.  Respondent filed his supplemental answer on July 16, 2009, and petitioner filed a reply on July 29, 2009.

B.     *Factual Background Underlying Petitioner's Conviction*

As summarized in petitioner's brief on appeal in the Michigan Court of Appeals, petitioner's

convictions arise from

a motor vehicle accident in which Defendant[] lost control of his Ford Probe vehicle while traveling eastbound on M-60 near the crest of a hill, went onto the gravel shoulder, then slid back on to the road surface and while sliding sideways, crossed into the westbound lane and struck a Chevy Celebrity head on, resulting in the death of the driver of the Celebrity, Amanda Hale, a 20 year old student at Spring Arbor College.  The collision occurred around midnight on September 20, 2001, on M-60 near Moscow Road, just outside of Spring Arbor, in Jackson County Michigan. Defendant who's [sic] blood alcohol was measured at .16 sustained serious injuries including a closed head injury requiring extensive hospitalization.

. . . .

The prosecution presented evidence at trial showing that on September 20, 2001, Spring Arbor police officer Brian Harmison, on routine patrol in the Village of Spring Arbor, noticed in his rear view mirror that a vehicle was passing a line of semi-trucks in the downtown area on Main Street, where the speed limit was 35 mph. He pulled off on a side street to wait for the vehicle to pass and to lock his radar on it to obtain a speed.  Before he could do so the car sped past at what he estimated to be 80 mph.  He pulled out after the vehicle eastbound on Main Street (M-60 outside of the village), activated his lights and siren and claimed that he was traveling at speeds over 100 mph to attempt to catch up to the vehicle.  He observed it for a brief time when it disappeared over a hill about a mile outside of Spring Arbor.  As he drove over the crest of the hill he did not see any vehicles, until he saw the reflector of a car off the north side of M-60 upside down, then another vehicle on its side against a tree, both with extensive damage from a collision (T1, 169-184).[2]

He contacted EMS and other emergency personnel who required the jaws of life to extract Ms. Hall from her vehicle.  She was conveyed to Foote Hospital in Jackson then flown to University of Michigan Hospital in Ann Arbor, where she died from her injuries.

Mark Carrithers and Craig Robbins were truck drivers who were driving their rigs in the Village of Spring Arbor when passed by Defendant's vehicle.  Contrary to Officer Harmison's testimony, they both indicated that Defendant's vehicle was traveling at a speed range of 55-60 mph, when it passed them (T1, 202-211; 213-219).[3]

---

[2]In addition to this summary of his testimony, Officer Harmison testified that both Spring Arbor University and a McDonald's restaurant were on the road through town on which petitioner was going 80 miles per hour, *see* Trial. Tr., Vol. I, at 174; and that petitioner passed the two semis by crossing a doubly yellow line while going up a hill, and that along this stretch of road were a retirement center, a grocery store, and a restaurant, *see id.* at 176-77.

[3]Both testified that petitioner passed them, and was going 55 miles per hour, while they were still in the Village, where the posted speed was 35 miles per hour.  *See* Trial Tr., Vol. I, at 207, 215.  In addition, Carrithers testified that petitioner was traveling so fast that he radioed a warning to other

Accident reconstruction experts Joseph Quainton and Jason Breining, of the Jackson County Sheriff's Department, (JCSD) were called to the scene and to investigate the accident. They photographed and took measurements of the area and collected evidence. Two empty beer cans were found in Defendant's vehicle. They opined that Defendant's vehicle went off the road surface to the eastbound gravel shoulder causing yaw marks to be left, then as the vehicle "fishtailed" and slid sideways, returned to the paved surface, went across the eastbound lane and the westbound lane onto the westbound shoulder, where its passenger side impacted head-on with the Celebrity that had braked and swerved to the right in an attempt to avoid being hit. (T1, 220-295).

Based on the calculations and subsequent measurements taken with a new computer laser device, it was determined that Defendant's vehicle was traveling at a speed of 74 mph when it left the road surface and 46 mph when it collided with Ms. Hale's vehicle (T1 282, 286; T2 340).[4]

Stipulations were entered into that Defendant's drivers [sic] license was suspended continuously since January 28, 1998, that the victim was Amanda Hale, who died from multiple trauma that resulted in brain death and the decision was made to remove her from life support on September 22, 2001, that the lab report indicated that Defendant's BAC was .16 and that the chain of evidence was proper, and to the qualifications and a report from MSP Sergeant Megee, who verified the JCSD conclusions as related to speed of vehicles (T1, 198-200; 296-302).

The people rested as did the defense without offering any evidence (T1, 302-303).

Def.-Appellant's Br. on App., in *People v. Sondey*, No. 242145 (Mich. Ct. App.), at 1-3.

C.    *Standard of Review*

Because petitioner's application was filed after April 24, 1996, his petition is governed by

the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No.

104-132, 110 Stat. 1214 (Apr. 24, 1996). *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

Amongst other amendments, the AEDPA amended the substantive standards for granting habeas

relief by providing:

(d) An application for a writ of habeas corpus on behalf of a person in

---

drivers. *See id.* at 207.

[4]The experts also concluded that neither car had mechanical failure, and that Hale did not in any way contribute to the cause of the accident. *See* Trial Tr., Vol. I, at 289, 292.

custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also*, *Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams*, 529 U.S. at 405-06); *see also*, *Early v. Packer*, 537 U.S. 3, 8 (2002); *Bell*, 535 U.S. at 694. "[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also*, *Bell*, 535 U.S. at 694. However, "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also*, *Williams*, 529 U.S. at 409.

By its terms, § 2254(d)(1) limits a federal habeas court's review to a determination of whether the state court's decision comports with "clearly established federal law as determined by

the Supreme Court."  Thus, "§ 2254(d)(1) restricts the source of clearly established law to [the Supreme] Court's jurisprudence."  *Williams*, 529 U.S. at 412.  Further, the "phrase 'refers to the holdings, as opposed to the dicta, of [the] Court's decisions as of the time of the relevant state-court decision.'  In other words, 'clearly established Federal law' under § 2254(d)(1) is the governing legal principle or principles set forth by the Supreme Court at the time the state court renders its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003) (citations omitted) (quoting *Williams*, 529 U.S. at 412).

Although "clearly established Federal law as determined by the Supreme Court" is the benchmark for habeas review of a state court decision, the standard set forth in § 2254(d) "does not require citation of [Supreme Court] cases–indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  *Early*, 537 U.S. at 8; *see also*, *Mitchell*, 540 U.S. at 16.  Further, although the requirements of "clearly established law" are to be determined solely by the holdings of the Supreme Court, the decisions of lower federal courts are useful in assessing the reasonableness of the state court's resolution of an issue.  *See Williams v. Bowersox*, 340 F.3d 667, 671 (8th Cir. 2003); *Phoenix v. Matesanz*, 233 F.3d 77, 83 n.3 (1st Cir. 2000); *Dickens v. Jones*, 203 F. Supp. 354, 359 (E.D. Mich. 2002) (Tarnow, J.).

D.      *Sufficiency of the Evidence (Claim I)*[5]

Petitioner first argues that the prosecution presented insufficient evidence to prove beyond a reasonable doubt that he committed second degree murder.  The Court should conclude that

---

[5]Although petitioner's amended petition asserts only his ineffective assistance of counsel claims, I assume that he continues to assert the three claims raised in his initial petition.  The analysis of petitioner's sufficiency of the evidence claim that follows is identical to the analysis set forth in my initial Report in this case.

petitioner is not entitled to habeas relief on this claim.

1.     *Clearly Established Law*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In Re Winship*, 397 U.S. 358, 364 (1970).  Under the pre-AEDPA standard for habeas review of sufficiency of the evidence challenges, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).  Reviewing courts must view the evidence, draw inferences and resolve conflicting inferences from the record in favor of the prosecution.  *See Neal v. Morris*, 972 F.2d 675, 678 (6th Cir. 1992).  In determining the sufficiency of the evidence, the court must give circumstantial evidence the same weight as direct evidence.  *See United States v. Farley*, 2 F.3d 645, 650 (6th Cir. 1993).  However, under the amended version of § 2254(d)(1) a federal habeas court must apply a more deferential standard of review of the state court decision.  Thus, the question here is whether the Michigan Court of Appeals's application of the *Jackson* standard was reasonable. *See Gomez v. Acevedo*, 106 F.3d 192, 198-200 (7th Cir. 1997), *vacated on other grounds sub nom. Gomez v. DeTella*, 522 U.S. 801 (1998); *Restrepo v. DiPaolo*, 1 F. Supp. 2d 103, 106 (D. Mass 1998).

While a challenge to the sufficiency of the evidence on an established element of an offense raises a federal constitutional claim cognizable in a habeas corpus proceeding, "[t]he applicability of the reasonable doubt standard . . . has always been dependent on how a State defines the offense that is charged in any given case." *Patterson v. New York*, 432 U.S. 197, 211 n.12 (1977); *see also*,

10

*Jackson*, 443 U.S. at 324 n.16; *Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975). Thus, "[a] federal court must look to state law to determine the elements of the crime." *Quartararo v. Hanslmaier*, 186 F.3d 91, 97 (2d Cir. 1999).

Under Michigan law, the common law crime of murder is defined as second degree murder, and is punishable by up to life imprisonment. *See* MICH. COMP. LAWS § 750.317. To establish second degree murder, the prosecution must show that the defendant killed a human being with malice aforethought. In order to show malice aforethought, the prosecution must establish one of three mental states on the part of the defendant at the time of the killing: (1) intent to kill; (2) intent to commit great bodily harm; or (3) intent to create a very high risk of death or great bodily harm with the knowledge that death or great bodily harm is the probable result. *See People v. Dykhouse*, 418 Mich. 488, 495, 345 N.W.2d 150, 151 (1984); *People v. Aaron*, 409 Mich. 672, 713-14, 299 N.W.2d 304, 319-20 (1980).

2.     *Analysis*

Petitioner contends that there was insufficient evidence presented at trial to sustain his conviction. Specifically, he contends that the prosecution failed to present sufficient evidence of malice. The Michigan Court of Appeals rejected this claim. The court began its analysis by noting that, under Michigan caselaw, "'not every intoxicated driving case resulting in a fatality constitutes second degree murder." Rather, to satisfy the malice requirement for second-degree murder, the evidence must show 'a level of misconduct that goes beyond that of drunk driving.'" *Sondey*, 2003 WL 23018260, at *1, slip op. at 2 (quoting *People v. Werner*, 254 Mich. App. 528, 533, 659 N.W.2d 688, 693(2002)). The court also explained, however, that "malice may be inferred from evidence that establishes 'the intent to do an act that is in obvious disregard of life-endangering

11

consequences.'" *Id.* (quoting *People v. Aldrich*, 246 Mich. App. 101, 123, 631 N.W.2d 67, 80 (2001) (internal quotations omitted)).   Applying these principles to petitioner's case, the court concluded that the evidence of malice was sufficient, explaining:

> In this case, the facts established a level of conduct that goes beyond mere drunk driving.   Defendant had a blood alcohol level well over the legal limit.   He knowingly drove with a driver's license that had been suspended for four years.   He lived near the scene of the accident and was, therefore, familiar with the terrain of the road on which it occurred.   He was speeding down the town's main thoroughfare and later passed a pair of semi-tractor trailers on a two-lane road as they climbed a large hill in an area designated as a no-passing zone.   There was evidence indicating that defendant was speeding over one-hundred miles per hour when he drove down a steep decline in a hilly area that blocked the view of vehicles driving in the opposite direction.   Police accident reconstruction experts opined that immediately following this maneuver, he lost control of his vehicle and crashed into the car that the twenty-year old decedent was driving in the opposite direction.   We conclude that the evidence was sufficient for a reasonable inference that defendant acted in obvious disregard of life-endangering consequences.

*Id.* at *2, slip op. at 2.   The Court should conclude that this determination was reasonable.

As noted above, under Michigan law malice may be inferred from "the intent to do an act that is in obvious disregard of life-endangering consequences." *Aldrich*, 246 Mich. App. at 123, 631 N.W.2d at 80.   Here, there was more than mere evidence of petitioner's drunk driving; rather, there was evidence presented which showed "a level of misconduct that [went] beyond that of drunk driving." *People v. Goecke*, 457 Mich. 442, 466, 579 N.W.2d 868, 879 (1998).   Specifically, the prosecutor presented evidence that petitioner was driving at an excessively high rate of speed through business areas, and had passed two trucks in a downtown area by passing over a double yellow line (indicating a no-passing zone) on a hill.   Further, there was evidence that petitioner was familiar with the area.   The courts have repeatedly found similar circumstances sufficient to establish the malice element of second degree murder under Michigan law. *See, e.g.*, *Goecke*, 457 Mich. at 470, 579 N.W.2d at 881 (defendant evaded police, drove at high speed on city's main artery, and

12

narrowly avoided one accident prior to the fatal accident); *id*. at 471, 579 N.W.2d at 881 (another

defendant has a blood alcohol content of .18%, drove well in excess of the speed limit, and ran a red

light); *Aldrich*, 246 Mich. App. at 123, 631 N.W.2d at 80, *habeas corpus denied sub nom. Aldrich*

*v. Bock*, 327 F. Supp. 2d 743, 763 (E.D. Mich. 2004) (Cleland, J., adopting recommendation of

Majzoub, M.J.) (defendant drag racing at excessive speed while intoxicated); *see also*, *United States*

*v. Sheffey*, 57 F.3d 1419, 1431 (6th Cir. 1995) (applying malice element of federal murder statute);

*Hamilton v. McLemore*, No. 01-10121, 2004 WL 1765483, at *4 (E.D. Mich. July 9, 2004) (Lawson,

J.); *People v. Bell*, No. 242168, 2003 WL 22399290, at *9 (Mich. Ct. App. Oct. 21, 2003) (per

curiam); *People v. Cloutier*, No. 204723, 1999 WL 33446673, at *1 (Mich. Ct. App. Apr. 20, 1999)

(per curiam).

Petitioner also contends that the evidence was insufficient because Officer Harmison's

testimony was incredible, as it was contradicted by the testimony of the truck drivers and the

physical evidence from the accident scene.  "The fact that the testimony is contradictory does not

mean that evidence is insufficient, only that the jury must make credibility determinations."

*Government of the Virgin Islands v. Isaac*, 50 F.3d 1175, 1179 (3d Cir. 1995).  It is the job of the

jury, not this Court sitting on habeas review, to resolve conflicts in the evidence, and this Court must

presume that the jury resolved those conflicts in favor of the prosecution.  *See Jackson*, 443 U.S. at

326; *United States v. Sherwood*, 98 F.3d 402, 408 (9th Cir. 1996).  Although the truck drivers

estimated petitioner's speed to about 55 miles per hour in the 35 mile per hour zone, petitioner offers

no reason why their testimony was inherently superior to Officer Harmison's 80 miles per hour

estimate.  Further, under either version petitioner was vastly exceeding the speed limit through a

downtown area, while also passing the trucks on a hill in a no passing zone.  Further, the accident

13

report does not contradict Officer Harmison's testimony that petitioner was going 100 miles per hour outside of the Village. The accident reconstruction experts could only determine petitioner's speed–at 74 miles per hour–when he began to lose control of the vehicle. This does not preclude a conclusion that petitioner was driving faster than that speed prior to losing control. Thus, this Court cannot disturb the jury's credibility findings.

In short, there was sufficient evidence presented from which the jury could infer that petitioner acted with malice aforethought sufficient to constitute second degree murder. Accordingly, the Michigan Court of Appeals's resolution of this claim was not an unreasonable application of *Jackson v. Virginia*, and the Court should conclude that petitioner is not entitled to habeas relief on this claim.

E.     *Prosecutorial Misconduct and Jury Instructions (Claims II & III)*

Petitioner next raises several challenges to the prosecutor's comments at his trial and the trial court's instructions to the jury. The Court should conclude that these claims are procedurally defaulted, and thus that petitioner is not entitled to habeas relief. Alternatively, the Court should conclude that the claims are without merit.

1.     *Procedural Default*

a. *Default of the Claims*

Under the procedural default doctrine, a federal habeas court will not review a question of federal law if the state court's decision rests on a substantive or procedural state law ground that is independent of the federal question and is adequate to support the judgment. *See Coleman v. Thompson*, 501 U.S. 722, 729-30 (1991); *Wainwright v. Sykes*, 433 U.S. 72, 81 (1977). Habeas review of such a claim is barred "unless the habeas petitioner can show 'cause' for the default and

14

'prejudice attributable thereto,' or demonstrate that failure to consider the federal claim will result in a 'fundamental miscarriage of justice.'" *Harris v. Reed*, 489 U.S. 255, 262 (1989) (citations omitted).

Here, petitioner's jury instruction and prosecutorial misconduct claims are barred by petitioner's procedural default in the state courts. The Michigan Court of Appeals found that a review of these claims was barred by petitioner's failure to object to the jury instructions and prosecutorial misconduct in the trial court. *See Sondey*, 2003 WL 23018260, at *2, slip op. at 2 ("Defendant failed to object to the prosecutor's alleged misconduct at trial and, thus, has failed to preserve this issue for appeal."); *id*. at *4, slip op. at 4 ("Defendant's attorney affirmatively expressed satisfaction with the instructions at trial. Defendant has therefore waived the issue."). This contemporaneous objection rule was firmly established at the time of petitioner's trial. *See, e.g.*, *People v. Duncan*, 402 Mich. 1, 15-16, 260 N.W.2d 58, 61-62 (1977); *People v. Curry*, 175 Mich. App. 33, 39, 437 N.W.2d 310, 314 (1989). As the state court clearly and expressly relied on this state procedural rule with respect to petitioner's jury instruction and prosecutorial misconduct claims, these claims are barred absent a showing of either cause and prejudice or a fundamental miscarriage of justice. *See Engle v. Isaac*, 456 U.S. 107, 125-129 (1982) (state contemporaneous objection rule is adequate procedural bar precluding consideration of habeas claims).

Further, this conclusion is not altered by the fact that the Michigan Court of Appeals did consider the merits of petitioner's prosecutorial misconduct claims. It is clear that the court of appeals did so only in the context of determining whether petitioner could establish plain error to overcome his procedural default. "[P]lain error review by the state court does not constitute a waiver of procedural default rules." *White v. Mitchell*, 431 F.3d 517, 525 (6th Cir. 2005); *see also*,

15

*Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).  Accordingly, the Court should conclude that petitioner's prosecutorial misconduct and jury instruction claims are procedurally defaulted.

### b.  Cause and Prejudice

As noted above, petitioner can still have the merits of his defaulted claims considered if he shows cause for, and prejudice attributable to, his procedural default.  To establish "cause," petitioner must "show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule."  *Murray*, 477 U.S. at 488; *see also*, *Coleman*, 501 U.S. at 753.  In his reply brief, petitioner raises only one basis to establish cause: counsel's alleged ineffectiveness in failing to object at trial.  However, petitioner cannot rely on this argument to establish cause for his procedural default.  As discussed below, petitioner's ineffective assistance of counsel claims are without merit.  Even if counsel erred in failing to object, attorney error short of constitutionally ineffective assistance does not provide cause for a procedural default.  *See Coleman*, 501 U.S. at 753; *Murray*, 477 U.S. at 488.  Accordingly, the Court should conclude that these claims are procedurally defaulted.

Further, as explained below, even if the Court concludes that these claims are not defaulted, the Court should conclude that the claims are without merit.

### 2.  *Prosecutorial Misconduct Claims (Claim II)*

Petitioner contends that the prosecutor committed misconduct and denied him a fair trial by numerous improper comments during closing argument.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

### a.  Clearly Established Law

For habeas relief to be warranted on the basis of prosecutorial misconduct, it is not enough

that the prosecutor's conduct was "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986). Rather, the misconduct must have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id.* (internal quotation omitted). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982). In determining whether the prosecutor's conduct was so egregious as to warrant habeas relief, a court should consider "the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they are isolated or extensive; whether they were deliberately or accidentally placed before the jury; and the strength of the competent proof to establish the guilt of the accused." *Pritchett v. Pitcher*, 117 F.3d 959, 964 (6th Cir. 1997) (internal quotations and citations omitted). In sum, to constitute a denial of due process the prosecutor's conduct must be "so pronounced and persistent that it permeates the entire atmosphere of the trial." *Id.* (internal quotation omitted).

### b. Denigrating Defense/Counsel

Petitioner first contends that the prosecutor improperly denigrated his defense and his counsel in comments directed towards counsel's strategy of conceding guilt on the drunk driving charges and arguing on the murder charge that petitioner was guilty, at most, of involuntary manslaughter, exemplified by the following comment:

> But the Defense, in effect, came up here automatically and said, "First of all, my – my client is guilty of OUIL. My client is guilty of OUIL causing death. And my client is guilty of driving while license suspended, causing death." . . . So, the Defense has a strategy, they know that the big charge that we're really here about is second degree murder. And we're – we're not here to just play compromise or let's make a deal. We're here to deal with that charge.
>
> And then, of course, they've got a strategy for that charge, too. "Well, my client is guilty of involuntary manslaughter, because his actions only rose to the level of gross negligence." . . . And then Mr. Brandt's seductive strategy is "Well, throw my client a bone. Throw him a bone. Disregard all the reckless driving and just find

17

out that what he did was gross negligence.  Give him a freebie for all the negligent
driving that led up to the murder and the death of Amanda Hale."

That's really the detour that the Defense wants you to take in this case.  A
detour, because the Defense wants to avoid full accountability by Todd Sondey for
his actions.

Trial Tr., Vol. II, at 331-32; *see also*, *id*. at 359.  The prosecutor also argued that "it insults your

common sense for Mr. Brandt to get up here and tell you that what his client did is just merely a

little gross negligence, so he can try to get his client of the hook of murder two."  *Id*. at 342.

Petitioner cannot show that the comments denied him a fair trial.  First, they were responsive

to petitioner's strategy in defending the case, as laid out in counsel's opening statement. *See Darden

v. Wainwright*, 477 U.S. 168, 182 (1986)(one factor in evaluating claims of prosecutorial misconduct

is whether the prosecutor's statements were "invited by or was responsive" to the defense.).  More

importantly, the prosecutor's comments preceded and concluded his discussion of why the evidence

showed more than gross negligence and warranted a verdict of guilty of second degree murder.  The

comments did not disparage petitioner or his counsel personally, and were directed solely at whether

the jury should accept petitioner's theory of the case.  The comments fall far short of even more

egregious comments which have been held not to deprive a defendant of a fair trial.  *See Kappos v.

Hanks*, 54 F.3d 365, 367-68 (7th Cir. 1995) (petitioner not denied a fair trial where prosecutor

referred to him as a "murderer" and "artful liar"); *See United States v. August*, 984 F.2d 705, 714-15

(6th Cir. 1992) (on direct review of federal conviction, prosecutor's comment that defense counsel

was trying to trick the jury did not rise to the level of prosecutorial misconduct, noting that "[a]

prosecutor commenting that the defense is attempting to trick the jury is a permissible means of

arguing so long as those comments are not overly excessive or do not impair the search for truth.");

*Lindgren v. Lane*, 925 F.2d 198, 204 (7th Cir. 1991) (prosecutor's comments that defense theory was

18

rife with inconsistencies, that defense counsel pulled "these inconsistencies like a magician pulls rabbits out of his hats," and that defense counsel was trying to "trick" the jury with "illusions" were not so egregious as to warrant habeas relief); *Irwin v. Singletary*, 882 F. Supp. 1036, 1043-44 (M.D. Fla. 1995) (habeas relief not warranted based on prosecutor's statement during closing argument that defendant was "grasping at straws"). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. *Arguing Facts Not in Evidence*

Petitioner also argues that the prosecutor argued on the basis of facts which were not introduced into evidence. Petitioner points to the prosecutor's comments regarding why Officer Harmison's testimony concerning the area through which petitioner drove supported a finding that petitioner acted with greater than gross negligence: "He testified that it's an area you've got a lot of students, you've got kids, you've got pedestrians, you've got students out on bikes, you got the McDonald's right there. Is it foreseeable to somebody that, when you're driving at speeds of 80 miles an hour through an area like that, that you might lose control and hit somebody, especially if you're drunk?" Trial Tr., Vol. II, at 337. Petitioner also points to the prosecutor's discussion of the speeds at which petitioner was driving, in which the prosecutor noted that petitioner was traveling at up to 80 miles per hour through the town and over 100 miles per hour outside of the town. *See id.* at 334.

Petitioner cannot show that these arguments were based on facts not in evidence. Officer Harmison did testify as to the pedestrian traffic in the town. He did not testify that such traffic was present at the time petitioner drove through the town, but neither did the prosecutor comment that he had so testified. The prosecutor merely commented that the general characteristics of the area

19

through which petitioner drove were factors the jury should consider in assessing petitioner's mental state.   Regardless of whether any pedestrian or vehicle actually went into the roadway while petitioner was driving through the town, the fact that a pedestrian or vehicle may have done so was relevant to whether petitioner's driving was reckless.   Further, Officer Harmison testified to the speeds reflected by the prosecutor in his closing argument.   Although there was some contradictory evidence regarding petitioner's speed, nothing prohibits a prosecutor in his closing argument from highlighting the evidence presented at trial which best supports the prosecutor's case, nor is a prosecutor required to discuss conflicting evidence.   Accordingly, petitioner is not entitled to habeas relief on this claim.

### d.  Misstating the Law

Petitioner next contends that the prosecutor misstated the law in giving examples of types of conduct that constitute gross negligence, *see* Trial Tr., Vol. II, at 336-37, 364-65, and in arguing that the jury could "infer gross negligence from drunk driving alone."   *Id.* at 341.   With respect to the latter comment, petitioner has not shown that the prosecutor's comment was an inaccurate statement of the law.   *See People v. Lardie*, 452 Mich. 231, 251, 551 N.W.2d 656, 665 (1996), *overruled on other grounds by People v. Schaefer*, 473 Mich. 418, 703 N.W.2d 774 (2005). Likewise, petitioner has not shown that the examples of gross negligence given by the prosecutor were incorrect under the Michigan courts' understanding of that term.   Even if they were, however, petitioner cannot show that he was denied a fair trial.   The trial court instructed the jury that the comments and arguments of counsel are not evidence, and provided a proper definition of gross negligence.   Because the trial court correctly stated the law and admonished the jury that only its instructions on the law were to be followed, petitioner cannot show that he was prejudiced by the

20

prosecutor's alleged misstatement of the law.  *See United States v. Wadlington*, 233 F.3d 1067, 1079

(8th Cir. 2000); *United States v. Gonzalez-Gonzalez*, 136 F.3d 6, 9 (1st Cir. 1998).  Accordingly,

the Court should conclude that petitioner is not entitled to habeas relief on this prosecutorial

misconduct claim.

*e.  Civic Duty/Sympathy*

Finally, petitioner contends that the prosecutor appealed to the jury's sense of civic duty and

elicited sympathy for the victim through the following comments:

- "Amanda Hale cut down in the prime of her life.  The only child, the only grandchild of those parents, studying to be a music teacher at Spring Arbor University.
    That's a nice call for the chaplain to make from the college, let him call two parents from [an]other country and let them know your daughter's been killed by a drunk driver at over 100 miles an hour.
    Amanda's not ever going to smile again.  She's not ever going to play some beautiful trumpet out there.  She's never going to compose any more music or teach any kids the joy and beauty of music.
    But Amanda can get some justice.  You can give her some justice. You can hold that Defendant fully accountable for his crimes, and you can start with murder in the second degree."  Trial. Tr., Vol. II, at 343-44.

- [on rebuttal, in response to defense counsel's closing argument] "This case is about facts.  And Mr. Brandt points out that the Judge will instruct you that sympathy is not supposed to be part of your deliberations.  He's right.
    Amanda Hale was a person.  It is wrong for us to try to tell you a little bit about who she was, what her dreams, aspirations, the impact she might have made on the world?  Is it wrong for us to tell you about who she was in little ways?
    We could have called her parents to the witness stand to talk about their daughter, talk about the phone call they got that night.  It's difficult for them just to be here, to have to listen to what happened to their daughter." Trial. Tr., Vol. II, at 357-58.

- "In today's day and age, we all have heard the dangers of drunken driving. We've heard the horror stories that, unfortunately, thousands of families have to endure every year.  We see the TV, the media ads, the commercials that talk about friends don't let friends drive drunk.  We've heard about organizations like Mothers Against Drunk Driving, who got together,

because so many parents were losing their kids to drunk driving.

We all know the dangers of driving while drunk. We all know what can happen. This case is a glaring and unfortunately typical example of what often does happen. It shatters lives. It breaks hearts.

Last Thursday would have been Amanda's twenty-first birthday. She would have celebrated that birthday with her family. But, there were no candles blown out by Amanda or her parents. They won't see her at her commencement ceremonies at Spring Arbor. She won't graduate. Her parents won't be able to see her walk down the aisle or see the baptism of her grandson or daughter. Her life and the joy that she may have been able to give to others by teaching will never happen. Those candles have been permanently blown out by him when, for his own selfish reasons, he made that fateful decision to drive drunk, not caring about what may happen to Amanda or somebody just like her.

There is justice in this case. Mr. Brandt says, 'My client will pay a heavy price.' What price can bring Amanda back? He's guilty as charged. Whatever price he's going to pay isn't enough, because Amanda will never come back, and we're all at a loss because of it." Trial. Tr., Vol. II, at 368-70.

To the extent petitioner claims these comments appealed to the jury's sense of civic duty, petitioner's argument is without merit. A "civic duty" argument is one which "encourages the jury to convict the defendant based upon principles of protection of the community and encourages them to ignore the evidence in the case." *United States v. Mejorado-Soto*, No. 94-2404, 1995 WL 764115, at *2 (6th Cir. Dec. 27, 1995) (per curiam). Here, the prosecutor did neither. Although the prosecutor noted the prevalence of drunk driving in society and suggested that the jury could give justice to Amanda, he did not at any point encourage the jury to ignore the evidence or convict petitioner to protect the community from petitioner or other drunk drivers.

With respect to petitioner's sympathy argument, it is true that the prosecutor's comments seem designed to elicit a certain amount of sympathy for the victim and her parents. However, in light of the overwhelming evidence of petitioner's guilt, petitioner cannot show that these comments deprived him of a fair trial. Although the prosecutor's language may have been somewhat

22

emotional, the prosecutor did not ask the jury to convict out of sympathy for the victim or appeal

to the jury to act as the conscience of the community.  Indeed, the prosecutor conceded that the "case

is about facts" and that "sympathy is not supposed to be part of your deliberations."  Trial Tr., Vol.

II, at 357.  Even if improper the prosecutor's references to the victim were much less prejudicial than

other comments referring to victims which have been upheld on habeas review.  *See, e.g.*, *Brechen*

*v. Reynolds*, 41 F.3d 1343, 1355-56 (10th Cir. 1994); *United States ex. rel. Rockman v. DeRobertis*,

717 F. Supp. 553, 569-70 (N.D. Ill. 1989)(prosecutor's reference to victim "in his grave crying out

for a guilty verdict" did not deprive petitioner of a fair trial); *Kordenbrock v. Scroggy*, 680 F. Supp.

867, 896-96 (E.D. Ky. 1988)(petitioner was not denied a fair trial where, during the guilt-innocence

phase of the trial, the prosecutor admonished the jury not to forget the victim because "he had a right

to live."), *rev'd on other grounds*, 919 F.2d 1091 (6th Cir. 1999)(en banc).  Accordingly, the Court

should conclude that petitioner is not entitled to habeas relief on this claim.

     3.     *Jury Instructions (Claim III)*

Petitioner also contends that he was denied a fair trial by the trial court's instructions to the

jury.  Specifically, he contends that the court's instructions failed to adequately explain to the jury

the differences between ordinary negligence, gross negligence, and malice.  The Court should

conclude that petitioner is not entitled to habeas relief on this claim.

*a. Clearly Established Law*

It is well established that habeas corpus is not available to remedy a state court's error in the

application of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) ("Today, we

reemphasize that it is not the province of a federal habeas court to reexamine state-court

determinations on state-law questions."); *Jackson v. Ylst*, 921 F.2d 882, 885 (9th Cir. 1990) (a

federal court on habeas review "ha[s] no authority to review a state's application of its own laws).

Thus, in order for habeas corpus relief to be warranted on the basis of incorrect jury instructions, a

petitioner must show more than that the instructions are undesirable, erroneous or universally

condemned; rather, taken as a whole, they must be so infirm that they rendered the entire trial

fundamentally unfair. *See Estelle*, 502 U.S. at 72 (1991); *Henderson v. Kibbe*, 431 U.S. 145, 154

(1977); *Wood v. Marshall*, 790 F.2d 548, 551-52 (6th Cir. 1986); *cf. United States v. Sheffey*, 57

F.3d 1419, 1429-30 (6th Cir. 1995) (standard of review for jury instructions challenged on direct

criminal appeal). As the Supreme Court noted in *Estelle*, the Court should "also bear in mind [the

Supreme Court's] previous admonition that we 'have defined the category of infractions that violate

"fundamental fairness" very narrowly.'" *Estelle*, 502 U.S. at 72-73 (quoting *Dowling v. United

States*, 493 U.S. 342, 352 (1990)).

Despite this deferential standard of review, a jury instruction will not withstand scrutiny if

it submits alternative theories for the jury to convict, one of which is permissible and the other

unconstitutional, and the reviewing court cannot determine on which theory the jury relied. *See Zant

v. Stephens*, 462 U.S. 862, 881-83 (1983); *Bachellar v. Maryland*, 397 U.S. 564, 571 (1970); *United

States v. Wilkinson*, 26 F.3d 623, 625 (6th Cir. 1994). *But see Griffin v. United States*, 502 U.S. 46,

56 (1991) (general jury verdict is valid if sufficient evidence supports one of the grounds for

conviction, so long as the other submitted grounds are neither illegal nor unconstitutional, but

merely unsupported by the evidence); *United States v. Mari*, 47 F.3d 782, 785-86 (6th Cir. 1995).

An instruction is also invalid if it can be viewed by the jury as shifting the burden of proving an

element of the case onto the defendant, as when it instructs the jury to presume that a person intends

to commit the natural, ordinary and usual consequences of his voluntary actions, *see Sandstrom v.*

*Montana*, 442 U.S. 510, 524 (1979), or to presume malice from either an unlawful act or from the use of a deadly weapon, *see Yates v. Evatt*, 500 U.S. 391, 401-02 (1991); *Houston v. Dutton*, 50 F.3d 381, 385-86 (6th Cir.1995). If an instruction is ambiguous and not necessarily erroneous, it can run afoul of the Constitution only if there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution. *See Estelle*, 502 U.S. at 72 & 73 n.4; *Boyde v. California*, 494 U.S. 370, 380 (1990). Nonetheless, instructional errors of state law will rarely form the basis for federal habeas corpus relief. *See Estelle*, 502 U.S. at 71-72.

*b. Analysis*

Here, the Court should conclude that the jury instructions were adequate and properly explained to the jury the mental states required to convict petitioner. With respect to the murder charge, the trial court first instructed the jury on the elements of second degree murder, including the mental state element requiring the prosecution to prove that petitioner intended to kill, intended to do great bodily harm, or knowingly created a very high risk of death or great bodily harm, knowing that death or great bodily harm would be the likely result of his actions. *See* Trial Tr., Vol. II, at 379. The court next instructed on the elements of involuntary manslaughter as a lesser offense, including that the prosecution was required to prove that petitioner "operated the vehicle in a grossly negligent manner." *Id.* at 380. The court then instructed on negligent homicide as a lesser offense of second degree murder, instructing with respect to this crime that the prosecution had to prove that petitioner was "operating the vehicle in a negligent manner." *Id.* at 381. The trial court then explained to the jury the concepts of negligence and gross negligence, giving verbatim the instructions set form in MICHIGAN CRIMINAL JURY INSTRUCTIONS 2D (CJI2d) §§ 16.17-.18 defining "slight negligence," "ordinary negligence," and "gross negligence," and stating that for

25

manslaughter the jury must find gross negligence.  *See* Trial Tr., Vol. II, at 382-83.  Specifically,

the portion of the instruction defining gross negligence provides:

> "Gross negligence" means more than carelessness.  It means willfully
> disregarding the result to others that might follow from an act or failure to act.  In
> order to find that the Defendant was grossly negligent, you must find each of the
> following three things beyond a reasonable doubt:
> First, that the Defendant knew of the danger to another; that is, he knew there
> was a situation that required him to take ordinary care to avoid injuring another;
> Second, that the Defendant could have avoided injuring another by using
> ordinary care; and
> Third, that the Defendant failed to use ordinary care to prevent injuring
> another when, to a reasonable person, it must have been apparent that the result was
> likely to be serious injury.

Trial Tr., Vol. II, at 382-83; *see also*, CJI2d § 16.18.

Petitioner contends that this instruction, referring to "ordinary care," lowered the burden

required to be shown to establish gross negligence.  The Court should conclude that this claim is

without merit, because petitioner cannot show that the instruction was an erroneous definition of the

elements of manslaughter under state law.  As noted above, the trial court's instruction was a

verbatim recitation of the instruction in CJI2d § 16.17 and § 16.18.  The elements of gross

negligence in CJI2d § 16.18 are identical to the elements of gross negligence identified in Michigan

caselaw, *see People v. Clark*, 453 Mich. 572, 578-79 & n.4, 556 N.W.2d 820, 822 & n.4 (1996);

*People v. McCoy*, 223 Mich. App. 500, 503, 566 N.W.2d 667, 669 (1997), and the Michigan

Supreme Court has expressly indicated that CJI2d § 16.18 accurately states the elements of gross

negligence, *see Clark*, 453 Mich. at 578-79, 556 N.W.2d at 822.  Thus, the instructions were not

inaccurate.  Accordingly, the Court should conclude that petitioner is not entitled to habeas relief

26

on this claim.[6]

F.     *Ineffective Assistance of Counsel (Amended Claims I-III)*

Finally, petitioner contends that he was deprived of the effective assistance of counsel both at trial and on appeal.  The Court should conclude that petitioner is not entitled to habeas relief on these claims.

1.     *Clearly Established Law*

The Sixth Amendment right to counsel and the corollary right to effective assistance of counsel protect the fundamental right to a fair trial. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984).  To establish the ineffective assistance of counsel, petitioner must show that: (1) counsel's errors were so serious that "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment;" and (2) counsel's deficient performance prejudiced the defense.  *Id*. at 687.  These two components are mixed  questions of law and fact.  *See id*. at 698.  Further, "[t]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."  *Id*. at 697.  If "it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed."  *Id.*

With respect to the performance prong of the inquiry, a strong presumption exists that counsel's behavior lies within the wide range of reasonable professional assistance.  *See id*.  at 689; *O'Hara v. Wigginton*, 24 F.3d 823, 828 (6th Cir. 1994).  "[D]efendant must overcome the

---

[6]Further, even if the negligence/gross negligence instruction were erroneous, petitioner has failed to show how this error deprived him of a fair trial because he was convicted of second degree murder.  Petitioner does not contend that the trial court's instruction on the malice element of second degree murder was erroneous, nor does he explain how an incorrect instruction on the various forms of negligence impacted the jury's assessment of the malice element, which did not involve negligence in any way.

presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 466 U.S. at 689 (citation omitted). "[T]he court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. With respect to the prejudice prong, the reviewing court must determine, based on the totality of the evidence before the factfinder, "whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id*. at 695.

2.     *The State Court Evidentiary Hearing*

Before addressing the merits of petitioner's ineffective assistance of counsel claims, it is appropriate to set forth the evidence adduced at the evidentiary hearing regarding these claims, conducted in conjunction with petitioner's state court motion for relief from judgment. At the hearing, petitioner testified that he went into a coma following the accident, and that when he awoke he remembered the events leading up to the accident but had a hard time talking and was "more gullible" than he used to be. *See* Evid. Hr'g Tr., at 6-7. He testified that he first met counsel in the Jackson County Jail, and counsel informed him that he was going to file a motion to determine whether petitioner was competent to stand trial. Petitioner claimed that he did not understand what counsel meant by this, but decided not to ask counsel about the matter. Counsel asked petitioner if he remembered the accident, and petitioner responded that he did not because he understood the question to be about the actual collision, rather than events leading up to the collision. Petitioner testified that he did not volunteer any information to counsel because he thought counsel had everything under control, but also testified that he could not explain why he did not volunteer information to counsel. *See id*. at 9-12. Petitioner was questioned concerning his examination by

28

the Forensic Center, the report of which stated that petitioner was compliant and coherent, but also that petitioner "was unable to provide any account of the incident which led to his charges." Forensic Center Report, at 3 (attached to the prosecutor's brief on appeal in the post-judgment proceedings); *see* Evid. Hr'g Tr., at 14.

Petitioner testified that after the initial visit, he saw counsel only once more for ten minutes. Counsel and petitioner did not discuss anything about the trial such as evidence and witnesses, whether petitioner would testify, or counsel's strategy of admitting guilt to all but the murder charge. Petitioner indicated that he did not know that he had a right to testify, and that he did not say anything when counsel conceded guilt on three of the charges because he did not know what to do. When counsel rested without presenting any evidence, petitioner asked counsel if he was going to put petitioner on the stand, and counsel said, "no." When petitioner asked why, counsel ignored him. Petitioner testified that he was operating at about 20% capacity at the time of trial, and admitted that he never told counsel what he would have testified to if he had been called at trial. *See id*. at 22-30.

Petitioner testified at the evidentiary hearing that, if called as a witness, he would have testified at trial that he left his job at Ganton's Assisted Living Center at around 11:00 a.m. and walked home.[7] On his way home, he purchased a six-pack of beer. He arrived home at around noon and watched a movie while drinking two beers, and subsequently fell asleep. He awoke at about 9:30 p.m. and drank the remaining four cans of beer. His fiancé came home from work at about 11:00 p.m. He asked her to take him to the store to buy some cigarettes, and she said she would do

---

[7]As noted by the prosecutor, this testimony concerning his employment was somewhat inconsistent with his earlier testimony explaining that he was able to drink 18 beers a day because he worked with his father at a "family owned tool and die business." Evid. Hr'g Tr., at 18.

so after she showered.  Rather than wait, petitioner took his fiancé's keys and drove to the store.  On

the way, he passed three semi-trucks on M-60.  As he headed out of the town, he saw headlights

coming toward him in his lane.  He clicked his high-beam lights and moved on to the shoulder of

the road.  When the headlights moved over to the correct lane, he attempted to merge back onto the

roadway.  As he did do, his car hit a bump and slid sideways into the oncoming vehicle.  Defendant

testified that he did not think that his consumption of six beers during the day contributed to the

accident because he was a functional alcoholic who drank 12-18 cans of beer a day.  Petitioner

admitted that he was going 55 miles per hour in a 35 mile per hour zone, that he passed all three

trucks at once, and that he was going 80 miles per hour when he first noticed the victim's car and

65 miles per hour when he lost control.  *See id*. at 31-45.

In petitioner's handwritten version of the offense completed for the presentence report,

petitioner stated "I myself was not put on the stand to try to describe anything because I don't

remember."  Petitioner claimed that he had not written it quite that way, but had written down that

he didn't testify because counsel assumed he could not remember anything.  *See id*. at 48.  Petitioner

admitted that he reviewed what was written in the report for accuracy.  *See id*. at 49-50.  Petitioner

testified that when counsel spoke to him about witnesses, he understood a "witness" to be someone

who actually saw the crime, and so he did not mention either his ex-wife or his fiancé, both of whom

could have testified that he was a functional alcoholic who could drink a lot without becoming

impaired.  His fiancé also could have testified that the power steering pump on the car was broken

at the time of the accident.  *See id*. at 51-53.  Petitioner admitted that he did not tell his attorney

about these witnesses, and neither witness testified at the evidentiary hearing.  Petitioner testified

that he was represented on appeal by Martin Beres.  Petitioner never met Mr. Beres in person nor

30

did he ever talk to him on the telephone.  His only communication with Mr. Beres was through the mail, and he did not discuss any issues to raise on appeal.  *See id.* at 55-58.  Mr. Beres did not testify at the evidentiary hearing.

On cross-examination, petitioner admitted that had he testified at trial he would have testified that he did not have his license and that he could not wait for his fiancé to get out of the shower to take him to get cigarettes.  He also admitted that he was in fact guilty of the OUIL and driving on a suspended license offenses.  *See id.* at 63-64, 67.

Petitioner's trial counsel, Alfred Brandt, also testified at the evidentiary hearing.  He testified that he first met with petitioner at the "pre con" held on a Friday.  At that time he asked petitioner if he remembered anything about the accident and petitioner said he did not.  He met with petitioner again the following Saturday or Sunday, and petitioner again told Mr. Brandt that he did not remember what happened.  Mr. Brandt informed petitioner that he was going to send petitioner to the Forensic Center to have his competence to stand trial determined.  Petitioner gave him the name, address, and phone number of his fiancé at that time.  *See id.* at 69-76.

Mr. Brandt testified that he again met with defendant prior to the preliminary examination. at that time, petitioner asked whether he was going to testify, and Mr. Brandt responded that petitioner would not testify because he could not remember anything.  Mr. Brandt testified that, after talking with petitioner, he was satisfied that petitioner was processing and understanding the information that he provided to petitioner.  At the preliminary examination, during the testimony of a police witness regarding the condition of petitioner's car, petitioner told Mr. Brandt that there was a problem with the car's "axle."  Mr. Brandt questioned Deputies Breining and Quinton about this matter, and they testified that they found nothing wrong with the car.  *See id.* at 77-83.

31

Mr. Brandt testified that he next met with petitioner at the time he prepared a motion to quash.  At that time, he explained to petitioner the trial process and that petitioner would not be testifying because petitioner did not remember anything about the incident and because "it would just give the Prosecutor a field day with [him] on cross."  Mr. Brandt testified that, even if petitioner could remember the incident, he still would not have put him on the stand because of the dangers of cross-examination.  Petitioner did not tell Mr. Brandt that he wished to testify.  *See id.* at 85-87. Mr. Brandt met with petitioner again a week later, shortly before trial, and he again explained to petitioner the trial process and that he would not be putting on any evidence in defense.  At this time defendant indicated that he wanted to testify, and Mr. Brandt told him that it would not be a good idea because "You don't remember anything.  I know you want to say you're sorry, but this isn't the place for it."  Mr. Brandt explained to petitioner the defense strategy of conceding guilt on the OUIL and suspended license charges.  *See id.* at 87-89.

With respect to the prosecutor's comments at trial, Mr. Brandt testified that although some of the comments were potentially objectionable, he did not object because he generally believes that "less objection is better.  It almost looks like you're hiding, trying to hide the truth," and that an objection could highlight the objectionable comments.  *See id.* at 93-94.  Mr. Brandt sent the file to petitioner's appellate counsel, but did not have any discussions with appellate counsel concerning issues on appeal.  *See id.* at 94-95.

On cross-examination, Mr. Brandt testified that petitioner continued to tell him that he did not remember what occurred when he was in the car up to the time of trial.  *See id.* at 97.  Mr. Brandt denied telling petitioner that he could not testify even if he wanted to testify.  Rather, he told petitioner that "he could testify, but that it was my opinion that he should not, quite frankly I think

32

I said that he couldn't, because he couldn't remember anything. I think I used the word couldn't."
The prosecutor then asked, "You told him he could testify, but he couldn't testify?" Mr. Brandt
responded, "[h]e could testify, but he couldn't testify as to any of the fact because he didn't
remember anything." *Id*. at 97-98. Mr. Brandt testified that petitioner did not mention any potential
witnesses to him, and that he asked petitioner if petitioner recalled who he was with earlier in the
day but petitioner did not provide him with any names. *See id*. at 98.

Following arguments by counsel, the trial court denied petitioner's motion for relief from
judgment. With respect to the jury instruction issue, the court concluded that the issue was waived
because no testimony had been elicited regarding the jury instruction issue. *See id*. at 104-05. With
respect to the issues of petitioner testifying, conceding guilt, and failing to object, the Court
reviewed the evidence in the case and petitioner's testimony at the evidentiary hearing and
concluded:

> I'm not sure how testifying would have helped him at all. I'm satisfied Mr.
> Brandt did discuss the matter with him and he either didn't understand or perhaps
> over a period of time he's convinced himself that it he would have gotten on the
> stand and testified, this would have been a manslaughter or not guilty on that
> particular count and he wouldn't be serving life in prison. I've seen a lot of people
> testify in a lot of criminal cases and it's my opinion that 90 percent of them get
> themselves convicted by taking the stand.
>
> I can't see how anything would have been any different here for Mr. Sondey.
> I believe Mr. Brandt, he discussed the situation with Mr. Sondey and it was decided
> that he shouldn't take the stand and it probably was a wise decision under the
> circumstances. Then there is the situation where Mr. Brandt in addressing the jury
> in opening statement, the presentation on behalf of the defendant indicates that yes,
> you'll find the defendant guilt of these lesser offenses, the drunk driving, operating
> on a suspended license and whatever.
>
> This appears to the Court to be trial strategy for the reasons that were
> indicated by Mr. Brandt on the stand. There is no question that the defendant is
> guilty of these, I'm going to lose all credibility if I say and at the end of the trial you
> will find my client not guilty of anything here. I think it's good trial strategy and I
> agree with Mr. Brandt, in that if you lose credibility the first time you address the
> jury, you're done for the day. You might as well fix your carrying case here with

33

your books and your notes and take off, because you lost credibility to start with.

It sounds to the Court that it's good trial strategy and the theory that the jurors will think, well he's admitting to what he actually thinks he did in this matter and maybe a second degree murder isn't the appropriate offense. At least we get them thinking perhaps along these lines, keeping in mind that the testimony as I remember was just overwhelming in this case against Mr. Sondey. Then there is the objection by Mr. Sondey concerning the ineffective[ness] of counsel for counsel's failure to object to the Prosecutor's closing in this matter.

Most of these things have been addressed by the Court of Appeals, but the ones that were brought up by Mr. Dungan here today concerning perhaps some of the examples that the Prosecutor gave of what's going to be gross negligence in this matter, the Court instructed the jury as to what gross negligence is, they weren't obligated to accept anything that's said by the attorneys and I always instruct the juries that if anything is said by the attorneys that are opposite of the instructions, you're obligation is to follow the instructions and the law that's given to you by the Court in this matter.

They're instructed as to what gross negligence consists of in this matter, they're not obligated to accept anything, whether the Prosecutor gives a good example or a bad example. I accept again what Mr. Brandt said, you're jumping up every five minutes objecting to something, I think you tend to alienate the jurors just like Mr. Brandt said is his opinion concerning the matter and I think under the circumstances the failure to object is not harmful to the defendant in this matter, considering the instructions that were given [by] the Court.

*Id*. at 105-10.

3.    *Trial Counsel (Amended Claim I)*

Petitioner contends that trial counsel was ineffective for: (1) failing to interview petitioner, investigate, or present a defense; (2) failing to allow petitioner to testify and informing him of his right to do so; (3) conceding petitioner's guilt without his consent; and (4) failing to object to the prosecutor's misconduct and the court's faulty jury instruction. The Court should conclude that petitioner is not entitled to habeas relief on these claims.

a.    *Failure to Investigate or Present a Defense*

Petitioner first contends that counsel was ineffective for failing to interview him, investigate the case, or present a defense at trial. The Court should conclude that petitioner is not entitled to

habeas relief on this claim.

Petitioner's counsel testified at the evidentiary hearing that he in fact met with petitioner on several occasions, and that petitioner both could not recall the accident and failed to provide him with any witnesses. The trial court accepted counsel's testimony as credible in rejecting petitioner's claim. Although petitioner contends that his testimony was more credible, the trial court's factual findings are presumed correct on habeas review unless rebutted by clear and convincing evidence, 28 U.S.C. § 2254(e)(1), and petitioner may obtain relief only if the trial court's factual findings are unreasonable in light of the record, 28 U.S.C. § 2254(d)(2). Here, the record supports the trial court's credibility finding. Although petitioner offered various reasons for his failure to do so, petitioner himself testified at the evidentiary hearing that he did not provide counsel with the names of any witnesses. Further, the Forensic Center report and petitioner's own statements in the presentence report indicate that petitioner could not recall the incident, a fact buttressed by petitioner's own testimony that he was at only 20% capacity at the time of trial. In these circumstances, where petitioner had no recollection of the incident and could not provide counsel with the names of any witnesses, counsel cannot be deemed deficient for failing to investigate or present a defense. *See Strickland*, 466 U.S. at 691 ("The reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions.").

Further, petitioner cannot demonstrate prejudice. It is petitioner's burden to establish the elements of his ineffective assistance of counsel claim. *See United States v. Pierce*, 63 F.3d 818, 833 (6th Cir. 1995) (petitioner bears the burden of establishing counsel's ineffectiveness); *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993) (same). Thus, "a petition for habeas corpus relief based on counsel's failure to call witnesses must present this evidence in the form of the actual

35

testimony by the witness or affidavits." *United States ex rel. Townsend v. Young*, No. 01 C 0800, 2001 WL 910387, at *5 (N.D. Ill. Aug. 8, 2001) (citing *United States v. Ashimi*, 932 F.2d 643, 650 (7th Cir. 1991)); *see also*, *Pittman v. Florida*, No. 8:05-cv-1700, 2008 WL 2414027, at *12 (M.D. Fla. June 11, 2008). Similarly, "[a] defendant who alleges a failure to investigate on the part of his counsel must allege with specificity what the investigation would have revealed and how it would have altered the outcome of the trial." *United States v. Green*, 882 F.2d 999, 1003 (5th Cir. 1989). Here, petitioner suggests only two witnesses who could have testified on his behalf, his ex-wife and his fiancé. Neither witness testified at the evidentiary hearing, nor has petitioner provided any affidavits establishing the testimony of these witnesses. Even under petitioner's facts, however, he cannot demonstrate prejudice.

Petitioner contends that these two witnesses could have testified that he was a functional alcoholic who could drink 12-18 beers a day with no impairment. Even had these witnesses so testified, there is not a reasonable probability that the result of the proceeding would have been different. Regardless of their testimony, the blood alcohol tests revealed a significant blood alcohol content well over the legal limit. Further, neither witness could have testified to petitioner's behavior or level of sobriety at the time of the accident. In light of the significant evidence against petitioner, including the blood alcohol evidence and the eyewitness testimony concerning his driving, testimony that petitioner, in general, was a functional alcohol would have added little to the case and would not have created a reasonable probability that the jury would have assessed the other evidence differently. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### b. Failure to Allow Petitioner to Testify

Petitioner next contends that counsel was ineffective for failing to inform him of his right to testify and for failing to allow him to testify.  As with petitioner's first ineffective assistance claim, this claim was decided against petitioner on the basis of the trial court's credibility findings crediting the testimony of petitioner's counsel.  The trial court concluded, based on counsel's testimony, that the issue of petitioner testifying was discussed with petitioner and a decision was made that petitioner would not testify.  These factual findings are neither unreasonable, 28 U.S.C. § 2254(d)(2), nor rebutted by clear and convincing evidence, 28 U.S.C. § 2254(e)(1).  Further, the record does not reveal that petitioner at any time made known his desire to testify.  As the Sixth Circuit recently explained:

> Indeed, "[b]arring any statements or actions from the defendant indicating disagreement with counsel or the desire to testify, the trial court is neither required to sua sponte address a silent defendant and inquire whether the defendant knowingly and intentionally waived the right to testify, nor ensure that the defendant has waived the right on the record." To the contrary:
>> A defendant who wants to testify can reject defense counsel's advice to the contrary by insisting on testifying, communicating with the trial court, or discharging counsel. At base, a defendant must alert the trial court that he desires to testify or that there is a disagreement with defense counsel regarding whether he should take the stand. When a defendant does not alert the trial court of a disagreement, waiver of the right to testify may be inferred from the defendant's conduct. Waiver is presumed from the defendant's failure to testify or notify the trial court of the desire to do so.

*Hodge v. Haeberlin*, 579 F.3d 627, 639-40 (6th Cir. 2009) (citations omitted) (quoting *United States v. Weber*, 208 F.3d 545, 551 (6th Cir. 2000)).  Nor can petitioner show that counsel's advice regarding whether to testify was deficient, in light of petitioner's apparent inability to recall any details of the incident leading to the charges against him.

Further, even if counsel refused to call petitioner as a witness despite petitioner's express desire to testify, petitioner cannot demonstrate that he was prejudiced by counsel's failure to allow

37

him to testify. *See Hodge*, 579 F.3d at 640 (applying *Strickland* prejudice prong to claim that counsel failed to allow petitioner to testify); *United States v. Tavares*, 100 F.3d 995, 998 (D.C. Cir. 1996) (declining to establish rule of *per se* prejudice in claims involving counsel's interference with right to testify). Petitioner's counsel, the Forensic Center report, and petitioner's statements in the presentence report all support the conclusion that petitioner simply did not recall the accident at the time of trial, a conclusion found as a matter of fact by the trial court. Even if petitioner' testimony at the evidentiary hearing regarding the circumstances of the accident is accurate, there is no indication, and petitioner's evidentiary hearing testimony provides none, to conclude that petitioner had this recall of the accident at the time of trial, rather than having developed later. Further, petitioner himself conceded at the evidentiary hearing that he in fact was guilty of the OUIL offenses, had gone at least 20 miles per hour over the posted 35 mile per hour speed limit through the town, and had exceed 80 miles per hour outside of the town. Petitioner's testimony regarding the amount he drank was simply incredible in light of the blood alcohol content evidence. Further, petitioner's testimony that he was not impaired was belied by his own testimony at the evidentiary hearing describing his driving and the eyewitness testimony of his erratic driving. Nothing in petitioner's testimony at the evidentiary hearing establishes that he could recall the details of the incident at the time of trial, and even petitioner's later-recalled version of events would not have created a reasonable probability of a different result had petitioner testified at trial. Because counsel's advice was reasonable in light of the circumstances of the case, and because petitioner cannot demonstrate prejudice, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### c. Conceding Guilt

Petitioner next contends that counsel was ineffective for conceding his guilt to the OUIL and suspended license charges. The Court should conclude that petitioner is not entitled to habeas relief on this claim.

Contrary to petitioner's argument, counsel's comments did not amount to a plea of guilty in violation of his Sixth Amendment rights. It is true that "counsel lacks authority to consent to a guilty plea on a client's behalf; moreover, a defendant's tacit acquiescence in the decision to plead guilty is insufficient to render the plea valid." *Florida v. Nixon*, 543 U.S. 175, 187-88 (2004) (citations omitted). Nevertheless, the Court in *Nixon* declined to equate a concession of guilt made as part of a trial strategy with a plea of guilty. In that case, defense counsel conceded his client's substantive guilt and focused on trying to spare his client from the death penalty during the sentencing phase of the proceedings. The Court rejected the defendant's claim, reasoning that despite counsel's concession, the defendant

> retained the rights accorded a defendant in a criminal trial. The State was obliged to present during the guilt phase competent, admissible evidence establishing the essential elements of the crimes with which [defendant] was charged. . . . Further, the defense reserved the right to cross-examine witnesses for the prosecution and could endeavor, as [counsel] did, to exclude prejudicial evidence. In addition, in the event of errors in the trial or jury instructions, a concession of guilt would not hinder the defendant's right to appeal.

*Id*. at 188 (citations omitted). For these reasons, the Court rejected the state court's "erroneous equation of [counsel's] concession strategy to a guilty plea[.]" *Id*. at 189. The Court also explained that the normal *Strickland* standard governs the analysis of counsel's strategic decision. *See id*. at 189-90.

The lesson of *Nixon*, as reflected in cases decided both before and after that decision, is "that counsel's concession of a client's guilt does not automatically constitute deficient performance."

39

*Young v. Catoe*, 205 F.3d 750, 759 (4th Cir. 2000). More specifically, "conceding guilt to one count of a multi-count indictment to bolster the case for innocence on the remaining counts is a valid trial strategy which, by itself, does not rise to the level of deficient performance." *United States v. Holman*, 314 F.3d 837, 840 (7th Cir. 2002). As the *Holman* court explained, "[c]onceding an indefensible charge is thought to build credibility with a jury by acknowledging the overwhelming evidence of guilt for that particular charge, creating goodwill and trust that can be applied towards arguments attacking the remaining charges." *Id.*; *see also*, *Clozza v. Murray*, 913 F.2d 1092, 1099 (4th Cir. 1990) ("[T]here is a distinction which can and must be drawn between . . . a tactical retreat and . . . a complete surrender."); *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1095 (E.D. Mich. 2004) (Gadola, J.) (citing *Haynes v. Cain*, 298 F.3d 375, 381-82 (5th Cir. 2002); *Lingar v. Bowersox*, 176 F.3d 453, 459 (8th Cir. 1999); *Underwood v. Clark*, 939 F.2d 473, 474 (7th Cir. 1991)) ("A defense counsel's concession that his client is guilty of a lesser included offense is a legitimate trial strategy that does not amount to the abandonment of the defendant or a failure by counsel to subject the prosecutor's case to meaningful adversarial testing so as to amount to the denial of counsel.").

Here, counsel's strategy amounted to a tactical retreat, not a complete surrender. The evidence of petitioner's guilt on the OUIL and suspended license charges was overwhelming, and petitioner himself conceded that he was guilty of these offenses at the evidentiary hearing. Counsel attempting to argue against the jury finding any criminal responsibility on these charges could have caused the jury to simply discredit petitioner's entire defense. By suggesting that petitioner was willing to take responsibility for the crimes he clearly committed, counsel was able to argue that the murder charge, by far the most serious charge against petitioner, was simply an act of overcharging by the prosecutor which was not supported by the evidence. That this strategy was ultimately

unsuccessful does not mean that counsel was unreasonable in pursuing it, particularly in light of the evidence at trial. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

### d.  Failure to Object

Petitioner next contends that counsel was ineffective for failing to object to the prosecutorial misconduct and faulty jury instructions he identifies in his second and third habeas claims. With respect to the prosecutorial misconduct claims, petitioner cannot establish either that counsel was deficient or that he was prejudiced by counsel's failure to object. Counsel testified at the evidentiary hearing that he made a deliberate choice not to object, so as not to antagonize the jury or highlight the inappropriate comments. This was a reasonable tactical decision. *Cf. Hardamon v. United States*, 319 F.3d 943, 949 (7th Cir. 2003) ("A competent trial strategy frequently is to mitigate damaging evidence by allowing it to come in without drawing additional attention to it, such as an objection would."). Further, as discussed above, petitioner's prosecutorial misconduct claims are without merit because the prosecutor's actions were either not improper or not prejudicial. To the extent the prosecutor's actions were not improper, counsel was not deficient in failing to raise a meritless objection. *See Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995); *Burnett v. Collins*, 982 F.2d 922, 929 (5th Cir. 1993). To the extent that the prosecutor's actions were improper but not sufficiently egregious to deprive petitioner of a fair trial, petitioner cannot show that he was prejudiced by counsel's performance. *See White v. Withrow*, No. 00-CV-74231, 2001 WL 902624, at *12 (E.D. Mich. June 22, 2001) (Rosen, J.) (citing *United States v. Nwankwo*, 2 F. Supp. 2d 765, 770 (D. Md. 1998)) (no prejudice from counsel's failure to object to prosecutorial misconduct where prosecutor's comments did not deprive petitioner of a fair trial); *Rich v. Curtis*, No. 99-CV-73363,

41

2000 WL 1772628, at *8 (E.D. Mich. Oct. 24, 2000) (Friedman, J.) (same).

With respect to counsel's failure to object to the jury instructions, although there was no testimony regarding the jury instruction issue at the evidentiary hearing, petitioner cannot show that counsel was deficient because the instructions comported with Michigan law, following the Michigan Criminal Jury Instructions. Further, as discussed above, the instructions correctly stated Michigan law and did not cause confusion regarding the mental states necessary for each crime on which the jury was instructed. Thus, petitioner cannot show that counsel was ineffective for failing to object. *See Taylor v. Galaza*, No. C 99-2110, 2000 WL 365047, at *5-*6 (N.D. Cal. Apr. 4, 2000) (no prejudice from counsel's failure to request more specific defense theory instruction where court's instructions as a whole adequately conveyed defense theory and petitioner was not denied a fair trial by omission of specific instruction). Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on these ineffective assistance of counsel claims.

    4.    *Appellate Counsel (Amended Claim II)*

Petitioner also contends that his appellate counsel was ineffective for failing to raise his ineffective assistance of trial counsel claims on direct appeal. In order to succeed on this claim, however, petitioner must show, *inter alia*, that his claims would have succeeded on appeal. *See Smith v. Robbins*, 528 U.S. 259, 285-86 (2000); *McCleese v. United States*, 75 F.3d 1174, 1180 (7th Cir. 1996). As explained in the preceding section, petitioner has failed to show that his trial counsel claims are meritorious. He therefore cannot show that appellate counsel was ineffective for failing to raise these claims on direct appeal. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief on this claim.

    5.    *Evidentiary Hearing (Amended Claim III)*

In his third amended habeas claim, petitioner asks for a remand for a second evidentiary hearing to develop facts relevant to his claim that trial counsel was ineffective for failing to object to the court's jury instructions.  The trial court had rejected petitioner's ineffective assistance claim based on petitioner's failure to present any evidence on the jury instruction matter at the evidentiary hearing.  Petitioner contends that this was not due to the fault of his counsel at the evidentiary hearing, but was due to the trial court's order granting an evidentiary hearing, which limited the matters to be presented at the hearing.  The Court should conclude that petitioner is not entitled to any relief on this claim.

To the extent that petitioner raises this issue as a substantive basis for habeas relief, his claim is not cognizable.  Nothing in the Constitution requires a state to establish a system of postconviction review, and thus "an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition." *Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997) (internal quotation omitted); *accord Dawson v. Snyder*, 988 F. Supp. 783, 826 (D. Del. 1997) (citing *Steele v. Young*, 11 F.3d 1518, 1524 (10th Cir. 1993) and *Duff-Smith v. Collins*, 973 F.2d 1175, 1182 (5th Cir. 1992)).  As the Sixth Circuit has explained:

> [T]he Sixth Circuit has consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review. *See Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir.1986); *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir.2002). . . . [C]laims challenging state collateral post-conviction proceedings "cannot be brought under the federal habeas corpus provision, 28 U.S.C. § 2254," because " 'the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and ... the traditional function of the writ is to secure release from illegal custody.' " *Kirby*, 794 F.2d at 246 (quoting *Preiser v. Rodriguez*, 411 U.S. 475, 484, 93 S.Ct. 1827, 36 L.Ed.2d 439 (1973)); *see also Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 95 L.Ed.2d 539 (1987) ("States have no obligation to provide this avenue of relief, and when they do, the fundamental fairness mandated by the Due Process Clause does not require that the State supply a lawyer as well." (citation omitted)). A due process claim related to collateral post-conviction proceedings, even if resolved in a petitioner's favor, would not

43

"result [in] . . . release or a reduction in . . . time to be served or in any other way affect his detention because we would not be reviewing any matter directly pertaining to his detention." *Kirby*, 794 F.2d at 247. "Though the ultimate goal in" a case alleging post-conviction error "is release from confinement, the result of habeas review of the specific issue[ ] ... is not in any way related to the confinement." *Id.* at 248. Accordingly, we have held repeatedly that "the scope of the writ [does not] reach this second tier of complaints about deficiencies in state post-conviction proceedings," noting that "the writ is not the proper means" to challenge "collateral matters" as opposed to "the underlying state conviction giving rise to the prisoner's incarceration." *Id.* at 248, 247; *see also Alley v. Bell*, 307 F.3d 380, 387 (6th Cir.2002) ("error committed during state post-conviction proceedings can not [sic] provide a basis for federal habeas relief" (citing *Kirby*, 794 F.2d at 247)); *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir.2001) ("habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief").

*Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir.2007). In short, petitioner's challenge to the state court post-conviction proceedings is not cognizable on habeas review.

To the extent that petitioner seeks an evidentiary hearing in this Court relating to his jury instruction claim, the Court should conclude that such a hearing is not necessary. In addressing whether an evidentiary hearing is appropriate in a habeas corpus case, a court must consider two separate issues: (1) is an evidentiary hearing necessary under Rule 8 of the Rules Governing Section 2254 Proceedings in United States District Courts, 28 U.S.C. foll. § 2254; and (2) whether a hearing is permitted under 28 U.S.C. § 2254(e)(2). Even assuming that an evidentiary were permitted under § 2254(e)(2), such a hearing is not necessary under Rule 8. In making the determination of whether an evidentiary hearing is necessary under Rule 8, "courts focus on whether a new evidentiary hearing would be meaningful, in that a new hearing would have the potential to advance the petitioner's claim." *Campbell v. Vaughn*, 209 F.3d 280, 287 (3d Cir. 2000) (discussing *Cardwell v. Greene*, 152 F.3d 331, 338 (4th Cir. 1998)); *see also*, *Alcorn v. Smith*, 781 F.2d 58, 59-60 (6th Cir. 1986) (applying pre-AEDPA law); *cf. Townsend v. Sain*, 372 U.S. 293, 312-13 (1963). Here, an evidentiary hearing would not have the potential to advance petitioner's claims. Regardless of

44

counsel's reasons for failing to object to the jury instructions, the record itself establishes that the jury instructions were correct under Michigan law and not unfairly prejudicial. Thus, whatever the facts uncovered at an evidentiary hearing, petitioner would still be unable to establish the prejudice component of his ineffective assistance of counsel claim. Accordingly, the Court should conclude that petitioner is not entitled to habeas relief or an evidentiary hearing with respect to this claim.

G.    *Certificate of Appealability*

1.    *Legal Standard*

As amended by the Antiterrorism and Effective Death Penalty Act, section 2253 provides that a petitioner may not appeal a denial of an application for a writ of habeas corpus unless a judge issues a certificate of appealability. *See* 28 U.S.C. § 2253(c)(1). The statute further provides that "[a] certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). As the Sixth Circuit has noted, this language represents a codification of the Supreme Court's decision in *Barefoot v. Estelle*, 463 U.S. 880 (1983), and "[t]he AEDPA thus makes no change to the general showing required to obtain a certificate[.]" *Lyons v. Ohio Adult Parole Auth.*, 105 F.3d 1063, 1073 (6th Cir. 1997); *accord Slack v. McDaniel*, 529 U.S. 473, 483 (2000). Although the statute does not define what constitutes a "substantial showing" of a denial of a constitutional right, the burden on the petitioner is obviously less than the burden for establishing entitlement to the writ; otherwise, a certificate could never issue. Rather, the courts that have considered the issue have concluded that "'[a] substantial showing requires the applicant to "demonstrate that the issues are debatable among jurists of reason; that a court could resolve the issues (in a different manner); or that the questions are adequate to deserve encouragement to proceed further."'" *Hicks v. Johnson*, 186 F.3d 634, 636 (5th Cir. 1999)

(quoting *Drinkard v. Johnson*, 97 F.3d 751, 755 (5th Cir. 1996) (quoting *Barefoot*, 463 U.S. at 893 n.4)); *accord Slack*, 529 U.S. at 483-84. Although the substantive standard is the same, "[t]he new Act does, however, require that certificates of appealability, unlike the former certificates of probable cause, specify which issues are appealable." *Lyons*, 105 F.3d at 1073. (citing 28 U.S.C. § 2253(c)(3)).

Effective December 1, 2009, the newly created Rule 11 of the Rules Governing Section 2254 Cases in the United States District Courts, 28 U.S.C. foll. § 2254, provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), 28 U.S.C. foll. § 2254. The rule tracks § 2253(c)(3)'s requirement that any grant of a certificate of appealability "state the specific issue or issues that satisfy the showing required by § 2253(c)(2)," Rule 11(a), but omits the requirement contained in the pre-amendment version of Federal Rule of Appellate Procedure 22(b)(1) that the court explain "why a certificate should not issue." FED. R. APP. P. 22(b)(1) (version effective prior to 2009 amendment); *see id.*, advisory committee note, 2009 amendments. In light of the new Rule 11 requirement that the Court either grant or deny the certificate of appealability at the time of its final adverse order, I include a recommendation regarding the certificate of appealability issue here.

2.    *Analysis*

For the reasons explained above, if the Court accepts my recommendation regarding petitioner's habeas application, the Court should also conclude that petitioner is not entitled to a certificate of appealability. It is clear that the evidence adduced at trial was sufficient under Michigan law to establish the malice element of second degree murder, and thus the Court's resolution of this issue is not reasonably debatable. Further, the record of the state court evidentiary

hearing conclusively refutes petitioner's ineffective assistance of counsel claims, rendering the Court's resolution of these claims not reasonably debatable. Further, petitioner's prosecutorial misconduct and jury instruction claims are clearly barred by petitioner's procedural default, and because his ineffective assistance of counsel claims are without merit, it is not reasonably debatable that petitioner cannot establish cause to excuse his procedural default. And, even if it were, it is not reasonably debatable that the court's instructions were proper and that the prosecutor did not commit prejudicial misconduct. Accordingly, if the Court accepts my recommendation regarding the merits of petitioner's claims, the Court should also deny petitioner a certificate of appealability.

H.     *Conclusion*

In view of the foregoing, the Court should conclude that petitioner's prosecutorial misconduct and jury instruction claims are barred by his procedural default in the state courts, and that the state courts' resolution of petitioner's claims did not result in a decision which was contrary to, or which involved an unreasonable application of, clearly established federal law. Accordingly, the Court should deny petitioner's application for the writ of habeas corpus.

III.     NOTICE TO PARTIES REGARDING OBJECTIONS:

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *See Willis*

*v. Secretary of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991). *Smith v. Detroit Federation of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

s/Paul J. Komives
PAUL J. KOMIVES
UNITED STATES MAGISTRATE JUDGE

Dated: 11/18/09

The undersigned certifies that a copy of the foregoing order was served on the attorneys of record   by electronic means or U.S. Mail on November 18, 2009.

s/Eddrey Butts
Case Manager

48